## CITY OF LINCOLN V. EDWARD JANESCH.

FILED FEBRUARY 6, 1902.   No. 11,111.

1. **Sidewalks:** REPAIRS: CONSTITUTION: POLICE POWER.   A statute
imposing upon lot owners in a city the duty of repairing side-
walks in the public streets adjacent to their premises, violates
no provision of the constitution and is a legitimate exercise of
the police power of the state.

2. ———: ICE AND SNOW: PUBLIC BENEFIT.   The duty to keep side-
walks in repair and free from snow and ice, prescribed by sub-
division 6, section 67, of the Lincoln charter (Compiled Statutes,
1895, ch. 13a, art. 1), is imposed primarily for the benefit of the
general public, but ultimately for the advantage of the city.

3. ———: REPAIRS: LIABILITY OF OWNER.   When a duty to repair an
adjacent sidewalk is lawfully imposed upon a property owner,
he is liable, according to the intention of the legislature, for
all damages resulting from a failure or refusal to perform
that duty.

4. **Legislature:** STATUTE.   In determining the intention of the legis-

lature, all provisions of the statute bearing upon the point in dispute should be taken into consideration and given due weight.

5. Mayor and Council: STREET COMMISSIONER: JURISDICTION. Statutory provisions giving the mayor and council and street commissioner complete jurisdiction and control over streets and sidewalks, requiring abutting lot owners to build and repair sidewalks in accordance with notice from the city authorities, and making such owners liable for all damages resulting from defective walks, construed, and *held* not to impose on abutters an absolute duty to repair on their own motion, but only a duty to repair after being notified so to do by said authorities.

ERROR from the district court for Lancaster county. Tried below before CORNISH, J. *Affirmed.*

*Joseph R. Webster, John P. Maule* and *E. C. Strode,* for plaintiff in error.

*Stephen B. Pound* and *Roscoe Pound, contra.*

SULLIVAN, C. J.

The action was brought by the city of Lincoln against Edward Janesch in the district court of Lancaster county and was grounded upon the alleged failure of defendant to repair a sidewalk on a public street adjoining his lot. The petition in substance avers that the sidewalk contiguous to defendant's property had become defective and that it was defendant's duty to repair it; that this duty was neglected; that, by reason of the defect in the walk, one Solomon Greenstone sustained an injury, on account of which he sued the city and recovered judgment. The court held, on demurrer, that these facts were not sufficient to constitute a cause of action and gave judgment on the merits in favor of defendant. It is not claimed that the facts pleaded show that Janesch was guilty of affirmative negligence such as would, according to the principles of the common law, make him liable to Greenstone, or liable over to the city; but it is insisted that a right of action for passive negligence is expressly given by the following' provision of the city charter: "It is hereby made the duty

of all real estate owners and occupants to keep the sidewalk alongside, or in front of, the same in good repair and free from snow and ice, and other obstructions, and they shall be liable for all damages or injuries occasioned by reason of the defective condition of any such sidewalk." The validity of this provision, in so far as it undertakes to make the lot owner liable for all damages occasioned by reason of the defective condition of an adjacent sidewalk, is the first question discussed by counsel.  It seems to be quite evident that the statute is referable to the police power of the state, and should be sustained as an exercise of that power by which both persons and property are subjected to all kinds of restraints and burdens for the convenience, comfort and safety of society.  Statutes requiring owners and occupants of lots bordering on public streets to remove snow and ice from their respective sidewalks have been upheld in Massachusetts and New York.  *In re Goddard*, 16 Pick. [Mass.], 504; *Village of Carthage v. Frederick*, 122 N. Y., 268.  A contrary conclusion, however, was reached in *Gridley v. City of Bloomington*, 88 Ill., 554, and this conclusion was, by an almost evenly divided court, adhered to in *City of Chicago v. O'Brien*, 111 Ill., 532.  In *Reinken v. Fuehring*, 130 Ind., 382, it was held that a statute charging upon property owners the expense of sweeping adjacent streets was valid; and in *Mayor v. Maberry*, 6 Humph. [Tenn.], 368, an abutter was held personally liable for the cost of laying a new sidewalk.  In Wisconsin and Michigan it has been assumed, without discussion, that the duty of repairing sidewalks may be imposed on lot owners and that such owners may be held liable, according to the intention of the legislature, for all the consequences of their defaults.  *Hiner v. City of Fond du Lac*, 71 Wis., 74; *Morton v. Smith*, 48 Wis., 265; *Henker v. City of Fond du Lac*, 71 Wis., 616; *Woodward v. City of Boscobel*, 84 Wis., 226; *Toutloff v. City of Green Bay*, 91 Wis., 490; *Selleck v. Tallman*, 93 Wis., 246; *City of Detroit v. Chaffee*, 70 Mich., 80; *Lynch v. Hubbard*, 101 Mich., 43.  If lot owners may be required by the legis-

lature, in the exercise of the police power of the state, to remove snow and ice from the adjacent streets, there would seem to be no very good reason why they may not be also required to remedy defects in adjacent sidewalks. The demands of public interest are no stronger in one case than in the other, and, as was said by Mr. Justice Brown in *Lawton v. Steele*, 152 U. S., 133, the legislature is vested with a large discretion, not only to determine what the interests of the public require, but what measures are necssary to protect such interests. Our conclusion upon this ranch of the case, based upon the decisions cited and many other authorities which we have consulted, among hem being *Town of Macon v. Patty*, 57 Miss., 378; *Sands v. City of Richmond*, 31 Gratt. [Va.], 571, Cooley, Taxation [2d ed.], 588; Burroughs, Taxation, 494, is that the provision of the Lincoln charter above set out was enacted for the convenience and safety of the public and is unaffected by constituional limitations upon the power of taxation.

But while we are convinced that the provision is valid, and that it imposes a duty, primarily, for the benefit of the public, but ultimately for the advantage of the city, we are not persuaded that the petition states a cause of action, or that the judgment in favor of the defendant is wrong. The clause upon which the city relies must be read in the light of other provisions of the charter. Standing alone, and considered by itself, the clause in question would seem to impose on the lot owner the duty of determining for himself and at his peril, when and how and with what materials a sidewalk should be repaired; it would seem to confer upon him authority to take possession of the walk and turn travelers into the street whenever in his judgment repairs are needed. It is almost inconceivable, and we can not believe, that the legislature intended to commit any of these matters to the discretion of the property owner. Sections 31 and 34 of the charter, (Compiled Statutes, 1895, ch. 13a, art. 1) are as follows:

"31. The street commissioner shall be subject to the

orders of the mayor and council, have general charge, direction and control of all work in the streets, sidewalks, culverts and bridges of the city, except matters in charge of the board of public works, and shall perform such other duties as the council may require."

"34. The mayor and council shall have the care, supervision, and control of all public highways, bridges, streets, alleys, public squares, and commons within the city, and shall cause the same to be kept open and in repair and free from nuisances."

Section 67 provides that the city authorities may require and regulate the construction of sidewalks, and that such walks shall be constructed of such width and materials as the council may determine; that the authorities may take up and remove all walks not laid in conformity to the rules and regulations which the council may adopt. It is further provided that, "In case any property owner shall refuse or neglect to repair the sidewalk adjacent to his property within two days after being notified so to do in the manner prescribed by ordinance, the proper officer may cause said walk to be repaired, and shall report the cost thereof to the council, when the same may be assessed against such property." Considering statutory provisions quite similar to these, the supreme court of New York, in *City of Rochester v. Campbell*, 123 N. Y., 415, speaking by Ruger, J., said: "It can not be supposed that the legislature intended to impose an absolute duty to repair upon an individual who could not exercise it except under the control of another. That the primary duty rests upon the municipality, notwithstanding a duty has also been imposed upon property owners, has been decided in this court, and it is inconsistent with this duty and the control which the municipality has of the streets to suppose that it was intended to impose a primary duty also upon the property owners. The two obligations are inconsistent with each other and can lead only to confusion and delay in the performance of a public service. The existence of an absolute power of control in one party, and an impera-

tive obligation to repair in another is impossible. The obligation to repair is necessarily subservient to the other, and must be performed or neglected at the will and pleasure of the party having the right of control. There is no divided duty here. The obligation to keep the streets and highways in repair rested on the towns. They could always perform this duty through the agency of others, and for the purpose of enabling them to do so they could, in specific cases, impose its performance on the lot owners, or compel them to pay the expense the town was subjected to in case it performed the duty, but the paramount obligation always rested upon the corporation." The same question was before the supreme court of Wisconsin in *Toutloff v. City of Green Bay, supra.* In the course of the opinion, written by Winslow, J., it is said: "Again, the lot owner has no choice as to the kind of repairs. It is very evident that the kind of repairs to be made, and the material to be used, are under the control of the street superintendent. If a lot owner proceeds of his own motion to repair, the street superintendent may stop him, compel him to change or remove what he has done, and require him to repair differently. Surely, if the lot owner must repair of his own motion, and owes that duty to every passer-by, on pain of damages for injuries, he ought to know definitely what he is to do. He can hardly owe a definite duty when he has no means of knowing how to discharge it."

The cases from which we have quoted do not, it is true, expressly decide the question we are now considering, but. they give strong and convincing reasons why it should be resolved in favor of the defendant; and the Wisconsin case discredits previous decisions (*Hiner v. City of Fond du Lac, supra,* and *Woodward v. City of Boscobel, supra*) in which it was held, or intimated, that a charter provision, like that upon which the plaintiff relies, imposed on the lot owner a duty to repair without any action on the part of the city. It must, of course, be presumed in construing the statute, that the legislature did not act blindly or arbi-

trarily, but rather that it had a reasonable and practical plan for the accomplishment of its purpose—a scheme which, in view of the paramount authority of the city over its streets and sidewalks at all times, would be capable of producing harmony of action and logical results. Municipal corporations in this state owe to the public the duty of keeping their streets and sidewalks safe and fit for use (*Davis v. City of Omaha*, 47 Nebr., 836; *City of Lincoln v. O'Brien*, 56 Nebr., 761) ; and, if they would take advantage of a statute enacted for the purpose of enabling them to transfer this burden to individual property owners, it is but just and right that they should be required to exercise their superior authority in determining the necessity for making repairs and to give notice of their determination. It would be strange legislation, indeed, which would not permit a city to charge the owner of property abutting on the street with the trifling expense of repairing a sidewalk, unless due notice to repair had been first given, but which would, without such notice, permit it to recover all the damages which it had suffered in consequence of the failure to repair.

The district court, in our opinion, reached a right conclusion and its judgment is therefore

AFFIRMED.

HOLCOMB, J.

I concur in the judgment of affirmance.