## MADDEN v. DELAWARE, L. & W. R. CO.

(District Court, N. D. New York. August 11, 1916.)

MUNICIPAL CORPORATIONS ☞808(4)—DEFECTIVE SIDEWALK—LIABILITY OF ADJOINING OWNER—STATUTE.

> Under Cortland City Charter, § 80, as amended by Laws N. Y. 1901, c. 196, § 10, providing that the board of public works shall have power to require sidewalks or any part of them to be constructed or repaired by the owners or occupants of abutting lands, and to require it to be done in such manner, at such times, and of such materials as it may direct; and that the owner or occupant of abutting lands shall be liable for "any" injury or damage by reason of omission, failure, or negligence to make or repair the sidewalk, or nonobservance by him of a resolution of such board authorized by such section, the absolute duty of repair is placed on such owner, though he has not been directed by the board to make it; and he is liable directly to a pedestrian injured by a defect negligently left.

> [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1685; Dec. Dig. ☞808(4).]

At Law. Action by Robert H. Madden against the Delaware, Lackawanna & Western Railroad Company. Verdict for plaintiff. Motion by defendant Delaware, Lackawanna & Western Railroad Company for an order setting aside the verdict of the jury in favor of the plaintiff for $15,064, and granting a new trial or absolutely dismissing the complaint. The cause of action alleged is negligence on the part of the defendant in not repairing or neglecting to replace a plank in the sidewalk in a public street in the city of Cortland on and abutting on lands leased and occupied by the defendant for railroad purposes and owned and purchased by the defendant's lessor for railroad purposes. The defendant while not questioning the fact that the sidewalk abutted on the lands leased and occupied by it and used for railroad purposes, denied and denies any obligation or duty to the public or to the plaintiff who was a traveler thereon to reconstruct or repair such walk even if it knew it was out of repair and in such a condition as to make it dangerous for persons lawfully traveling on such public street to walk thereon. Motion denied.

Clayton R. Lusk, of Cortland, N. Y., for plaintiff.
Charles V. Byrne, of Syracuse, N. Y., for defendant.

RAY, District Judge. The defendant leases and operates a railroad running from Binghamton, N. Y., to Syracuse, N. Y., through the city of Cortland, formerly the village of Cortlandville. In 1852 the lands involved here were acquired by the Syracuse & Binghamton Railroad Company, and in 1867 they passed by conveyance to the Syracuse & Southern Railroad Company, later Syracuse, Binghamton & New York Railroad Company, defendant's lessor. A railroad was constructed across these lands long prior to 1867, and at that time (1867) there was no highway or public street across same at the place in question, but some time prior to September 1, 1875, a road or public highway (now known as Elm street) came into public use across this property at the place in question extending from Church street, run-

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

ning north and south about parallel with the railroad and west of the same, and up to such railroad tracks, and later this highway by public use and travel up to September 1, 1875, was extended on east to Pomeroy street east of the railroad which street runs parallel with it. Whether this public highway by user was worked and whether it had walks does not appear.

September 1, 1875, the authorities of Cortlandville village duly adopted a resolution accepting said Elm street from the railroad easterly to Pomeroy street as one of its public streets. It does not appear when or how Elm street westerly of said railroad became one of the streets of the village, now city of Cortland, and I think it immaterial. Easterly from the railroad on the south side of Elm street there was a sidewalk, extending up to the tracks, prior to 1904, but who constructed it or repaired it does not appear. In 1904, there were changes made at this crossing at Elm street. The existing tracks of the railroad were raised some 4 or 5 inches and the existing sidewalk at this place in question (where the defect existed and the accident occurred) was raised and reconstructed. While the walk on the south side of Elm street was raised above the surface of the earth making the rise at the approach to the tracks more gradual and easy, the space below was not filled in and the result was a considerable space between the walk, which was constructed of boards or planks, and the earth beneath. Consequently if one of the planks or a considerable portion thereof was worn out or removed and a traveler thereon should step into the open space or hole his foot and limb would go down some distance and he would be liable to lose his equilibrium and fall, and, depending on circumstances, more or less serious results might follow. From spring about March or April, 1914, and continuously down to and including the night of September 21, 1914, there was a hole in this sidewalk, the part that had been elevated above the surface of the ground, which was some 18 inches to 2 feet in length, measuring from side to side of the walk, and about 6 or 7 inches wide, and on the part thereof on the railroad company's land and right of way and only a few feet from the most easterly rail. It was not large enough to attract attention in the nighttime nor small enough so that a traveler on the walk could step thereon with impunity or without danger of his foot and limb going therein and he being caught and thrown if moving. In short it was a dangerous hole and a dangerous defect on the walk. It was but a few feet from the flag shanty of defendant's flagman stationed at this crossing, and its existence must have been well known to that employé and servant of defendant. Its existence was thoroughly proved, as well as the time it had been there. The evidence tended to show that this particular plank by reason of dozy wood or rot had become broken about the center of the walk where it rested on the center sill of the walk and after being broken in had become detached on that side of the walk and had been then thrown or shoveled to one side leaving this dangerous hole in the walk on that side of it. It was a dangerous defect and one easily repaired with a piece of plank 2 to 3 feet long and 6 inches wide, a hammer, a saw or an axe, and a few nails. Repair

did not call for expert or engineering skill or even the skill of a carpenter. Any ordinary workman possessing ordinary common sense could have repaired the defect in 10 minutes if provided with 25 cents' worth of plank, one cent's worth of nails, a hammer and a saw, or for want of that an axe. The necessity of repair was obvious. Repair (unless the Legislature has so ordained) did not demand a meeting of the five commissioners of public works of the city of Cortland, formal resolutions of that body and a notice to the railroad to repair and the assessment and levy of a tax to meet and cover the expense. Neither did repair of this defect demand a meeting of the board of directors of the railroad company. It was a repair that should have been made and which could have been made without inconvenience to any one within a half hour after its existence was discovered. If the repair of this dangerous defect in this walk was not devolved on the railroad company by the charter of the city on its discovery or within a reasonable time thereafter without a meeting of the commissioners of public works of the city of Cortland and a determination by that board of city officials as to the size and character of the plank that should be put in to take the place of the broken piece to fill a hole 2½ feet long and 6 inches wide, and just how and when it should be done and the cost to be incurred in doing it, followed by notice of this official action to the railroad company—in short without the expenditure of more ink than necessary plank—then the Legislature of the state of New York has demonstrated its ability as an adept in the art of "How not to do it." Many lawyers drawing large fees have wrangled and many judges of experience and ability have studied and differed and written learned and conflicting opinions, and many clients have had their pocketbooks emptied and bank accounts depleted in efforts to ascertain the true meaning of statutes or charters similar to that of the city of Cortland, the product of the wisdom, or want of wisdom, of the lawmakers of the state of New York. And the question whether this plaintiff has the right to maintain this action and a right to the amount awarded by the jury depends on the proper construction and interpretation of the charter of the city of Cortland which, it must be confessed, is somewhat ambiguous and susceptible of at least three constructions.

But the intent and purpose of the statute to make the abutting owner or occupant, in this case the railroad company, liable to the city for the expense of the repair of a sidewalk, or liable to make the repairs on notice, etc., from the city and answer in damages to the city in case it does not repair, or liable directly to a person who is injured by reason of the failure of the railroad to make repairs when it knows of the defect, is plain. There was no evidence in this case that the defect had been brought to the attention of the city or its authorities, or that it had taken any action in relation thereto or given the railroad company notice to repair. On the evening of September 21, 1914, this plaintiff Robert H. Madden had been down Elm street easterly of the railroad tracks on business and was returning walking westerly on this plank walk on the south side of the street in the neighborhood of 11 o'clock. There were some high buildings on

both the north and south sides of Elm street near the railroad tracks, making it necessary for the plaintiff as he approached the tracks to look both north and south up and down the tracks for approaching trains, and this he was doing, walking at an ordinary gait for a pedestrian, when he stepped into this hole before described in the walk, and his foot was caught and he was thrown or fell forward, striking heavily on the ground and iron rail. He sustained serious injuries, which are probably permanent and which make it impossible for him to get about without assistance or to do any work except with his hands. There was a light on the street at this crossing, but the jury found there was absence of contributory negligence.

At the close of plaintiff's case and again at the close of the evidence the defendant moved to dismiss and for a direction to the jury to find a verdict for the defendant on the ground, generally speaking, that there was no common-law liability on the defendant to repair this walk, and that under the charter of the city of Cortland no liability to repair is placed on the railroad company until notice, etc., from the city, and that even then the liability to a person injured by reason of defects in the walk rests upon the city and the city must look to the railroad company. The court charged the jury:

"Now gentlemen, I say to you that under the provisions of the charter of the city (of Cortland) taking all of this charter together, that under the provisions of section 80, it was made the duty of the railroad company to replace that board or plank in that walk, or repair the walk, if it was unsafe, and you so find, and if such condition had continued such a length of time and under such circumstances as to give the railroad company notice of the defect and of its character, condition, and existence."

This was duly excepted to, and the question was duly raised by the defendant later and passed upon by the court adversely to the defendant. Exception was duly taken.

Section 80 of the charter of the city of Cortland, as amended by chapter 196, Laws of 1901, contains this provision:

"The *owner or occupant of lands fronting or abutting any street shall be liable for any injury or damages by reason of omission, failure or negligence to make, maintain or repair the sidewalk adjoining such lands* or for a violation, or nonobservance by him of a resolution or ordinance of the board of public works, authorized by this section, and shall not be relieved therefrom by the service of the notice above specified."

The whole of section 80 will be quoted later, but going back to section 13, as amended, we find a provision for the appointment of a board of "five commissioners of public works." By section 72, as amended, the powers of this board of public works are defined, and it has the following:

"The board of public works shall be commissioners of highways in and for the said city, and shall have all the powers and perform all the duties of commissioner of highways in towns, other than as provided in this act. The said board is vested with the charge, management, control and maintenance of all bridges, streets, sidewalks, public places and public squares within the city, of the sewers and the extension thereof, and of all buildings and structures appurtenant thereto, and of all machinery, tools, appliances and materials used in connection therewith. The board of public works shall have power: * * *

4. To make all contracts relating to construction, paving and repairs of the streets and sidewalks, public places and public squares, parks and sewers, and the cleaning of the streets, sprinkling, and the removal of dirt therefrom, the grading, paving and repaving and macadamizing and remacadamizing of all streets, public places, and public squares, and laying and extending of sewers and the provision of all materials, machinery, implements and utensils necessary therefor. * * *

5. To lay out, make, open, grade, level, regulate, pave, macadamize, plank, gravel, clean, repair and improve highways, streets, lanes, alleys, public grounds, parks, sidewalks, sewers, gutters, drains, aqueducts, reservoirs, crosswalks, and alter, amend, widen, straighten and discontinue the same and to establish grades and levels therefor, and alter the same through any lands, buildings or inclosures in said city."

## Section 80, as amended, above referred to, reads as follows:

"*Sidewalks, Construction and Repair Thereof; Assessment or Expenses, et cetera.*--The board of public works shall have power to require sidewalks, curbs and gutters, and the whole or any part of such sidewalks, curbs or gutters in said city to be constructed, made, paved, flagged, curbed, guttered, relaid, reset, mended, or repaired by the owners, possessors, or occupants of lands adjoining such sidewalks, curbs, or gutters; and to require any or either of such improvements, acts or things to be made or done in such a manner, at such times, and of such materials as it may prescribe and direct. Such improvements shall conform to the grades established or to be established before such improvements are made. The board of public works, in the resolutions or ordinances requiring any of the improvements, acts or things authorized by this section, shall specify in what manner and within what time and of what material the same must be made or done. It shall cause to be served upon the owners or occupants of the lands adjoining such sidewalks, curbs or gutters, so to be improved as aforesaid, a copy of said resolution or ordinance, with a notice, that, if the same is not done within the specified time by the several owners or occupants of the adjacent lands, it will be done by said board of public works at the expense of such owner or occupants. Such service shall be made either upon the owner or occupant by delivering the same to him personally or by leaving the same, in his absence, with some member of his family or person of suitable age, residing with him. In case the land is unoccupied, or the owner a nonresident, such service may be made upon the agent of such owner, if known to the board of public works, or by depositing the same in the post office, properly inclosed and the postage thereon prepaid, and directed to such owner at his place of residence or the post office nearest his place of residence. In case such owner or his place of residence is unknown, and there be no resident agent or occupant to the knowledge of the board of public works such service may be made affixing a copy of such ordinance or resolution and notice upon a conspicuous part of said premises. Affidavits of the service of such resolution or ordinance may be filed or recorded, or both, in the office of the clerk of said city, and the affidavits or the records thereof, or a certified copy of either, shall, in all courts and places, actions and proceedings be prima facie evidence of the facts stated therein. In case any such improvement, act or thing so required shall not be made, done or completed, as required, within the time so specified, the board of public works shall have the power to make, do or complete the same, and, having done so, shall, without giving any further notice, proceed to make a special assessment roll of the expense thereof against the delinquent owners or occupants, and upon said adjoining lands owned or occupied by them, assessing upon each parcel or lot of land the expense of the sidewalk, curb or gutter immediately adjoining it and file the same with the city clerk. Whereupon the said city clerk shall give notice in the official newspapers of the city that the same had been left with him and may be examined by all persons interested; and that at a time and place to be specified in said notice, which shall not be less than ten days from the first publication thereof, the common council will hear and act upon the application of any person deeming himself aggrieved by said special assessment, to have the

same altered or corrected, as he may deem just. After hearing all such applications, the common council may proceed to make such alterations and corrections, if any, in said special assessment roll, as it may deem just, and by resolution confirm the same. And said assessment shall thereupon become and be final and conclusive upon all parties interested in said real estate or affected thereby, and the said assessment shall be collected in the manner and with the fees prescribed for the collection of such special assessments in this act. The owner or occupant of lands fronting or abutting any street shall be liable for any injury or damages by reason of omission, failure or negligence to make, maintain or repair the sidewalk adjoining such lands or for a violation, or nonobservance by him of a resolution or ordinance of the board of public works, authorized by this section, and shall not be relieved therefrom by the service of the notice above specified. The board of public works shall have power in its discretion to allow a rebate of three cents per square foot to be paid out of the public works fund, upon the expense hereafter incurred by any person for laying in a public street of the city a stone or cement sidewalk adjoining lands owned or occupied by him, provided said sidewalk shall be constructed in the manner and of the material and quality prescribed by the said board, and the work shall be done under the supervision of the superintendent of public works, and shall be approved by him."

It is seen that by section 72 this board of public works is charged with the management, control, and *maintenance* of sidewalks and of the tools, appliances, and materials used in connection therewith; that it has power to make all contracts relating to *repairs* of sidewalks; and that it may lay out, make, plank or gravel or *repair* sidewalks. Section 80 relates specifically to "sidewalks, construction and repair thereof; assessment of expenses, et cetera" (thereof).

The opening clause or subdivision of section 80, as amended, provides that:

This board of public works shall "*have power* to require sidewalks * * * and the whole or *any part* of such sidewalks * * * to be constructed, made * * * *mended* or *repaired* by the owners, possessors or *occupants* of lands adjoining such sidewalks * * * and to require any or either of such * * * acts or things to be made or done in such manner, at such times, and of such materials as it may prescribe and direct."

It is urged that the duty of discovering defects in and need of repair to a sidewalk in a dangerous condition for the pedestrian using it rests on the city, and that until the city has discovered or been advised of the defect and until it has notified the abutting owner or occupant, in this case the railroad company, of the defect and demanded repair and prescribed what is to be done, and the manner of doing it and the material to be used in doing it, no duty rests on the occupant in any event, even if thereafter the railroad company would become liable directly to a person injured through its neglect to comply with the directions of the board of public works. If this be true, then, in case of the sudden breaking down of a sidewalk or its becoming unsafe for public travel, first, the city must have notice either specific and direct or by lapse of time, and, second, its board of public works must then meet and act and prescribe the repairs to be made, the mode and manner of doing the work, and the material to be used, and, third, notice of all this must then be given the railroad company, which, of course, would have a reasonable time, to be fixed in the notice, in which to comply with the demand and directions. If this be the true construction or interpretation of section 80 of the charter

of the city of Cortland, then the words, "The owner or occupant of lands fronting or abutting any street shall be liable for any injury or damage by reason of omission, failure or neglience to make, *maintain or repair* the sidewalk adjoining such lands," would require the following additions or interpolations to make them properly express in plain and unambiguous terms their meaning, viz., "After such action and on receiving such notice and demand to reconstruct or repair," at the beginning of the paragraph, and the words "or for a violation or nonobservance by him of a resolution or ordinance of the board of public works, authorized by this section, and shall not be relieved therefrom by the service of the notice above specified," would become and should be held to be superfluous and unnecessary. Those words would, in effect, be a repetition. Neither section 80 nor any other section of the charter of the city of Cortland as it stood prior to the amendments of 1901 (see chapter 160, Laws of 1900), contained the words, "The owner or occupant of lands fronting or abutting any street shall be liable for any injury or damages by reason of omission, failure or negligence to make, maintain or repair the sidewalk adjoining such lands," etc., although it did provide that the burden of construction and repair could be placed on the abutting owner by action of the board of public works by resolution and notice substantially in the same manner as is prescribed in section 80 as amended. The addition of the language quoted substantially at the end of the section cannot be held surplusage or meaningless. As under the charter as it stood prior to the amendments of 1901, the city through its board of public works had power to impose on the abutting owners the duty and obligation of repairing sidewalks a liability to persons injured by reason of a neglect to perform that duty when once imposed of course arose and it seems to me that the purpose of the Legislature was to make the duty of repair absolute without action on the part of the city, or its board of public works, when the city failed to act or saw fit not to act, and also gave the city the power to provide for improvements and changes and general repairs and prescribe the mode and manner of making them when it saw fit to do so.

The defendant contends as follows:

"(1) That defendant owed plaintiff no legal duty to repair the walk, because the absolute duty to maintain was cast upon the city, by virtue of the charter provisions and the common law.

"(2) That no duty was cast upon defendant to repair the walk until the notice specified by section 80 was served upon it or its lessor; and there being no specific statutory duty or obligation imposed upon defendant by section 80 to repair the walk, until the notice was served, it cannot be subjected to liability for failing to do that which it was not obliged to do.

"(3) That under section 80, defendant is not liable to plaintiff, but is only liable to the city for any loss it may sustain through defendant's failure to repair the walk; i. e., the purpose of the statute was not for the protection of the pedestrian, the latter having ample protection under the common law and statutory duty of the city to maintain its sidewalks in a reasonably safe condition, but as a means of empowering the city to keep its walks in shape.

"(4) That if section 80 can be construed as making defendant liable to plaintiff for mere failure to repair, then the section is violative of both the federal and state Constitutions, because it penalizes defendant for not doing

that which it is neither by common or statute law, required to do, and constitutes a taking of its property, without due process of law.

"(5) That the statute is highly penal, and therefore is to be strictly construed, and that nothing can be read into it which it does not contain, so as to extend its provisions."

The defendant cites Selleck v. Tallman, 93 Wis. 246, 67 N. W. 36, City of Lincoln v. Janesch, 63 Neb. 707, 89 N. W. 280, 56 L. R. A. 762, 93 Am. St. Rep. 478, McAuliffe v. Noyce, 86 Neb. 665, 126 N. W. 82, Toutloff v. City of Green Bay, 91 Wis. 490, 65 N. W. 168, Rochester v. Campbell, 123 N. Y. 405, 25 N. E. 937, 10 L. R. A. 393, 20 Am. St. Rep. 760, Webster v. City of Beaver Dam (C. C.) 84 Fed. 280, and Kosters v. National Bank of Auburn, 62 Misc. Rep. 419, 116 N. Y. Supp. 647, as supporting these propositions.

In New York in the absence of statutory provision to the contrary a municipal corporation is under obligation to keep the sidewalks constructed by it in the public streets in reasonably safe repair, and this duty it owes to the public. For its neglect in this regard it is liable to a person injured by reason thereof. 28 Cyc. 1340, 1341; Hines v. Lockport, 50 N. Y. 236; Pomfrey v. Saratoga, 104 N. Y. 459, 11 N. E. 43. But this duty of repair may also be imposed by statute on the abutting owner and he made liable for negligence in failing to repair the sidewalk if injury to a person lawfully using same for public travel results. Imposing this liability by statute on the abutting owner does not of itself exonerate the municipality. 28 Cyc. 1340, 1344, 1345, and cases there cited. It was competent for the Legislature of the state of New York to impose the absolute duty of making repairs to sidewalks in the city of Cortland on the abutting owners or occupants and reserve to the city, when it saw fit to act in the premises as quite likely it would do in important matters, the right and power to regulate repairs and construction and dictate the mode and manner of doing the work and the materials to be used.

It does not follow that for the reason the power to regulate and control in these respects was reserved to the city through its board of public works and the mode and manner of exercising such power when exercised was prescribed, the absolute duty of repair was not imposed on the abutting owner of making repairs, etc., for the benefit of the public or that the city must exercise the power so reserved as a condition of duty and liability on the part of such abutting owner. In construing and interpreting a statute every part of it is to be given effect if possible, and when it is amended and important words are added we are not at liberty to disregard them or ignore or distort their plain import and meaning. The end to be accomplished as well as all the surrounding circumstances and conditions are to be observed with a view to effectuate the object for which the statute was enacted. Essex v. New England Telegraph Co., 239 U. S. 313, 322, 36 Sup. Ct. 102, 60 L. Ed. 301. If the abutting owner or occupant was not to be under the duty to the public to repair sidewalks abutting on his premises except on the doing of certain acts by the city the added words quoted were unnecessary. When a duty to do an affirmative act in which the welfare and safety of the public is involved and concerned is imposed and there is refusal or neglect to perform

that duty so imposed and injury results, such neglect gives rise to a cause of action for damages in the absence of any statute so declaring. 1 Cyc. 700, and cases cited. Prior to the amendments of 1901, the city could impose the duty of repairing sidewalks on the abutting owners respectively and when that duty was imposed in the mode and manner prescribed by law and such owner neglected to perform his duty and injury to a traveler thereon resulted, he was liable in damages to the injured party. This assumes that the duty imposed was for the benefit of the public and not the city alone. If this was doubtful before the amendments of 1901, the doubt was cleared away when it was enacted that:

"The owner or occupant of lands fronting or abutting any street shall be liable *for any injury or damages*" (not damage or injury to the city) "by reason of omission, failure or negligence to make, maintain or repair the sidewalk adjoining such lands," and then further, "or for a violation or nonobservance by him of a resolution or ordinance of the board of public works authorized by this section (section 80) and shall not be relieved therefrom by the service of the notice (to repair) above specified."

Was all this necessary to give a cause of action over in favor of the city and against the abutting owner in case of failure to repair when directed so to do and damage to a third person and recovery by him against the city resulted? I think not. If it was the duty of the abutting owner or occupant on receiving notice in compliance with the statute to repair then in case he did not comply and the city was sued and recovery had for such negligence the abutting owner was liable for the amount of the judgment.

"So a person who has been exposed to liability and compelled to pay damages on account of the *negligence* or tortious act of another has a right of action against the latter for indemnity provided plaintiff and defendant are not joint tort-feasors in such a sense as to prevent plaintiff from recovery." 22 Cyc. 96, and cases cited.

It must appear that the parties are in pari delicto as to each other before recovery will be barred. 22 Cyc. 99, and cases cited. To defeat recovery over the one seeking indemnity must have joined in the negligent act. 22 Cyc. 94, and cases cited.

In City of Rochester v. Campbell et al., 123 N. Y. 409, 25 N. E. 937, 10 L. R. A. 393, 20 Am. St. Rep. 760, the statute in question provided:

"It shall in all cases be the duty of the owner of every lot or piece of land in said city to keep the sidewalks adjoining his lot or piece of land in good repair, and also to remove and clear away all snow and ice or other obstruction from such sidewalk."

The court held that this imposed no duty on the abutting owner to those who used the sidewalk and for whose benefit and use it was constructed and was to be kept in reasonably safe condition and repair for public travel, but was for the benefit of the city and to enable it to recover of such abutting owner after being itself sued and compelled to pay damages to a person injured by reason of the walk being out of repair through its own negligence in not repairing, thus making two lawsuits necessary, one by the injured party against the city and the other by the city against the abutting owner for indemnity.

The statute quoted says nothing about its being for the benefit of the city solely, but imposes the duty of repair on the abutting owner "in all cases." That statute was silent on the subject of who should be liable in damages to a person lawfully and properly using the walk for negligence in not keeping it in reasonably safe condition or repair. Here the statute states that the abutting owner shall be liable for all damages if the walk is out of repair and unsafe, but is silent except by implication as to whose duty it is to repair. Undoubtedly, if the statute referred to had imposed the duty of repair on the abutting owner by express and explicit language, and then had added the words quoted from the charter of the city of Cortland imposing liability for damages for negligence in not repairing, that court would have held the provisions were not made for the benefit of the persons lawfully using such walks for purposes of public travel and injured by reason of their being out of repair. I know of no good reason why a city may not have the right at its election to prescribe the repairs to be made and the mode and manner of making them, including a specification of the materials to be used without destroying the force and effect of plain and unambiguous language, imposing the duty of making repairs on the abutting owner or occupant, and providing that:

"The owner or occupant of abutting lands "shall be liable for any injury or damage by reason of omission, failure or negligence to make, maintain or repair the sidewalk adjoining such lands."

I think the fair inference is that such provision in a statute, in the absence of a declaration to the contrary, is for the benefit of persons lawfully using such sidewalk and liable to be injured by the negligence referred to, and that such persons may avail themselves of it. If the abutting owner or lessee, in this case a lessee for a long term of years, and occupant sees a dangerous hole in the sidewalk into which people passing thereon may step and be seriously injured, and hesitates to expend a dollar in time and material in simple repairs to make it safe through apprehension that it may be compelled to do the work over again, it is easy and simple for it to request the city to act and prescribe the necessary mode, manner, and material for doing the work. I do not think a court need worry itself into giving a strained and unnatural construction to plain language found in a statute because of fear that an abutting owner may be compelled to make repairs the second time if it acts before having explicit directions from the city or because of fear that cities may become lax in making repairs if the burden is imposed both on city and adjoining owner or occupant. The abutting owner or occupant has a way to avoid such double liability, viz., call on the city to act, while the travelers over the sidewalk have no remedy until they have suffered injury. When the traveler does suffer injury he should have a right of action against either city or abutting occupant or owner as he may elect if such negligence is to give a cause of action to any one against such abutter. In the recent case of Willis v. Parker, 159 N. Y. Supp. 676, affirming the decision at Special Term, and decided by the Appellate Division, Fourth Department, not yet officially reported, the

charter provision of the city of Auburn under consideration reads as follows:

"The owner or occupant of lands fronting or abutting on any street, highway, travelled road, public lane, alley or square, shall make, maintain and repair the sidewalk adjoining his lands and shall keep such sidewalk and the gutter free and clear of and from snow, ice and all other obstructions. Such owner and occupant and each of them, shall be liable for any injury or damage by reason of omission, failure or negligence to make, maintain or repair such sidewalk or to remove snow, ice or other obstructions therefrom, or for a violation or nonobservance of the ordinances relating to making, maintaining and repairing sidewalks and the removal of snow, ice and other obstructions from sidewalks, curbstones and gutters. Whenever the commissioner of public works, or a sidewalk inspector shall ascertain, have knowledge of, be notified or informed that a sidewalk or any part thereof is in a dangerous condition or in such condition that injury is liable to result from its use, from want of repair, failure to remove snow, ice or other obstruction therefrom or other cause, and such condition can, in his judgment, be remedied without laying a new walk, he shall properly guard the same, and as soon as practicable serve a written notice upon the owner or occupant of the abutting lot, if the same is occupied, requiring such owner or occupant to repair said walk or remove and remedy the dangerous or defective condition thereof, in the manner specified in said notice, within twenty-four hours after such notice."

The abutting owner was sued for negligence in not repairing, and the Special Term held there was no cause of action against him by the injured party growing out of a dangerous defect in the sidewalk, the result of want of repair, and that the provision quoted was enacted for the benefit of the city solely. This was affirmed on the authority of the Campbell Case, supra, opinion by Kruse, C. J., Lambert and De Angelis concurring, Foote and Merrell dissenting. As I am not hampered by any decision of the Circuit Court of Appeals in this the Second Circuit or by any holding of the Supreme Court of the United States and as the question under the charter of the city of Cortland has not been passed upon by the Court of Appeals of the state of New York, I concur in the dissenting opinion of Justice Foote which is logical and based on reason and not on precedent and apply it in the instant case. If the abutting owner or occupant is under duty to repair and liable for all damages resulting from neglect to perform this duty I am unable to comprehend why the injured party should first sue the city and then the city, if recovery is had against it, sue the abutting owner. This, however, may be *"simplified procedure."* The Legislature has neither said nor intimated that these provisions imposing liability on the abutting owner or occupant are solely for the benefit and protection of the city. As stated the fair inference is the contrary. Generally statutes imposing liability for negligence in not performing a duty enjoined thereby are intended for the benefit and protection of those directly injured by the negligence of those failing to observe them and who have an interest to prosecute.

It is conceded that abutting owners or occupants in the absence of a statute imposing the duty are not under any obligation to repair sidewalks. It is also conceded that when a statute imposing such duty provides conditions precedent to the creation of such obligation such

conditions must be complied with or the liability does not arise. So of a statute making the abutting owner responsible in damages for negligence in not repairing. But in the instant case we have no such conditions precedent. The city has the right and power, if in its discretion it sees fit to exercise the power, to prescribe the mode and manner of making repairs, specify the materials to be used in making them and fix a time within which such repairs must be made, provided the time is reasonable, but there is not a word in the statute that indicates this action by the city is a condition precedent to the obligation of the abutting owner or occupant to make repairs or to his or her liability for negligence in not making them. I fail to discover any reason, if the abutting owner or occupant is to be liable to any one to make repairs to sidewalks, and liable in damages to a party injured by defects therein, if not made, why the cause of action should not be vested in the party injured and he or she allowed to prosecute and enforce the liability. The statute says:

"The owner or occupant of lands fronting or abutting on any street shall be liable for *any* injury or damages by reason of omission, failure or negligence to make, maintain or repair the sidewalk adjoining such lands."

And unless we interpolate the words "which the city has authorized and directed to be made and notified such owner or occupant to make," the construction claimed by the defendant here is inadmissible, while if we do interpolate such words in construing the statute there will be many cases where the city will not act, and the words of this statute "shall be liable for any injury or damages" will have been limited in their scope to "shall be liable for such injuries or damages as result from the negligence of the owner or occupant after he has been duly required and notified to make repairs in the manner hereinbefore specified." We have too much judicial legislation, and here is an instance where to give the meaning and construction to this charter of the city of Cortland contended for by the defendant we must add and interpolate more words than are found in the paragraph as enacted by the lawmaking body, while if we construe it as the plaintiff contends it should be construed we neither interpolate nor add nor subtract anything. If we leave this statute as we find it and as it was drafted and enacted into law by the lawmaking body of the state, and enforce it as it reads, susceptible of more than one construction though it be, this plaintiff is entitled to recover against the abutting lessee and occupant, this defendant. The statute says the abutting occupant shall be liable for *any* injury or damages *by reason of negligence* to repair the sidewalk adjoining his lands. To whom liable? Plainly to the person injured by the negligence. What neglience? Plainly negligence to repair the sidewalks or cause it to be done and not negligence in failing to comply with the direction of the board of public works as that is immediately provided for by added words. If action on the part of the city is required as preliminary to such repairs the burden is on the abutting owner or occupant to set the city in motion and obtain directions, and if none are given go on and do the work. I do not think the first part of section 80 of this charter of the city of Cortland was designed to delegate power to the board

of public works of the city to create the liability of the abutting owner or occupant to repair sidewalks. The Legislature has created the obligation but vested in the board of public works directory powers as to the nature of the repairs, materials to be used, and time within which same shall be made if it elects to exercise them. The city may or may not, exercise this power through the board of public works, but the duty of the abutting owner or occupant is fixed as is his liability for damages in case he fails to perform the duty imposed by the law, not by the board of public works. In case the city does act and prescribe the mode and manner of doing the work, materials to be used and time within which the work is to be done, and the abutting owner or occupant fails to comply with the directions given, we have another provision in the charter following the one imposing liability for negligence which makes him liable "for a violation or nonobservance by him of a resolution or ordinance of the board of public works authorized by this section." Section 80. If the words "any injuries or damages by reason of omission, failure or negligence to make, maintain or repair the sidewalk" refer to injuries or damages resulting from a failure to repair when and in the manner directed by the board of public works only, and the abutting owner or occupant is not liable for other damages, why add "or for a violation or nonobservance by him of a resolution or ordinance of the board of public works?" As I read the charter of the city of Cortland, as amended, it imposes on the abutting owner or occupant the obligation to repair the sidewalks in front of his premises when he knows or is charged with knowledge that they are in a dangerous condition and need repair and makes him liable to an action by and responsible in damages to a person lawfully using same and injured by reason of his negligence in not repairing; authorizes the board of public works of the city, if it sees fit so to do, to control and direct such repairs, and prescribe the materials to be used, and the time within which such repairs must be made, and imposes liability on such abutting owner or occupant to the city in case he fails to observe and comply with its lawful directions; and permits the abutting owner or occupant before making repairs to notify the board of public works and obtain its directions, if such board sees fit to act and thus protect himself against doing the work a second time.

The motion to set aside the verdict and dismiss or grant a new trial is denied.