# TOWN OF ESSEX *v.* NEW ENGLAND TELEGRAPH COMPANY OF MASSACHUSETTS.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF MASSACHUSETTS.

No. 56. Argued November 5, 1915.—Decided December 6, 1916.

The contention that an act of Congress as construed and applied by the District Court transcends the power of Congress, if of sufficient substance gives this court jurisdiction of a direct appeal under § 238, Judicial Code.

The Post Road Act of 1866 substantially declares, in the interest of commerce and the convenient transmission of intelligence from place to place by the Government of the United States and its citizens, that the erection of telegraph lines shall, so far as state interference is concerned, be free to all who will submit to the conditions imposed. *Pensacola Tel. Co.* v. *West. Un. Tel. Co.*, 96 U. S. 1.

A State has no authority to say that a telegraph company may operate lines constructed over postal routes within its borders. *West Un. Tel. Co.* v. *Massachusetts*, 125 U. S. 530.

A city may not arbitrarily exclude wires and poles of a telegraph company from its streets, but may impose reasonable restrictions and regulations. *West. Un. Tel. Co.* v. *Richmond*, 224 U. S. 160.

Where a town has given written permission to a telegraph company specifying how posts could be placed and wires run, and the company has complied with such permission, such lines are protected by the Post Road Act of 1866 against subsequent exclusion or other arbitrary action by the town.

A municipality may, under exceptional circumstances, be held to have waived its rights, or to have estopped itself to assert them as by acquiescing for a long period in the maintenance of the system and large expenditures of money in connection therewith by a telegraph company.

The Post Road Act of 1866 must be construed and applied in recognition of the existing conditions and with a view to effectuate the purposes for which it was enacted.

Where rights of a telegraph company under the Post Road Act would be violated by threatened arbitrary action by a municipality, they may be protected by injunction; but the injunction should not prevent the municipality from subjecting the location and operation of the company's lines to reasonable regulations.

THE facts, which involve the rights of telegraph companies under, and the construction of, the Post Road Act of 1866, are stated in the opinion.

*Mr. William G. Thompson, Mr. George E. Mears* and *Mr. Romney Spring* for appellant, submitted:

On the date of the filing of the petition of June 1, 1905, this plaintiff was occupying the streets of the Town of Essex without any right whatever, either under the laws of the Commonwealth or of the United States.

The plaintiff had acquired no right to occupy said streets by complying with the statutes of the Commonwealth of Massachusetts.

The plaintiff had acquired no right to occupy said streets by lapse of time or by the acquiescence of any officials.

The plaintiff had acquired no right to occupy said streets under the act of Congress of July 24, 1866.

The selectmen's denial of the petition of June 1, 1905, did not impair any Federal right of the plaintiff under the act of Congress of July 24, 1866.

The only action of the selectmen that could have impaired the plaintiff's rights is a formal vote evidenced solely by the record required by the statute.

These propositions being sound, the denial by the selectmen of the petition of June 1, 1905, could not possibly impair any right of the plaintiff, for that petition was not the plaintiff's petition.

Even if the petition of June 1, 1905, is regarded as the petition of this plaintiff, then under the statute from which the selectmen derived their powers to act, they had no jurisdiction to grant it.

If the selectmen's denial of the petition (assumed for the purposes of argument to be the petition of the plaintiff) was required by a state statute, which was reasonable on any view of the meaning of the act of July 24, 1866,

then that denial could not possibly impair any right of the plaintiff under the act of Congress.

Even if the action of the selectmen may be ascertained from declarations and explanations outside their record, still no impairment of any Federal right of the plaintiff is shown.

The threats of the selectmen furnish the company no ground whatever for equitable relief in a Federal court, either against the town, or against the selectmen themselves.

The plaintiff, an open and persistent violator of the law, cannot invoke the assistance of a court of equity.

Even if the language of the selectmen most favorable to the plaintiff be adopted, the District Court had no right to make this a ground for an injunction, either against the town or against the selectmen.

Even if the preceding three main propositions were all unsound, the final decree should be modified.

The terms of the injunction, if granted, would deprive the Commonwealth of Massachusetts of all power in the future to impose any regulations at all upon the lines of the plaintiff.

Even if such an injunction were not a violation of the eleventh amendment to the Constitution, it is far in excess of anything necessary to protect the rights of the plaintiff under the act of Congress of July 24, 1866.

The injunction plainly and unwarrantably deprives the town of a remedy conferred upon it by the laws of the Commonwealth, viz.: R. L., c. 25, § 54.

The decree also nullifies the provisions of R. L., c. 122, §§ 16–23.

The decree also unwarrantably hampers the town in protecting itself by proceedings in the state courts under R. L., c. 51, § 18.

The limitation of the decree by the language suggested is the least that is required to render the decree valid on

any theory of the scope of the act of Congress of July 24, 1866.

Numerous authorities are cited in support of these contentions of appellants.

*Mr. G. Philip Wardner* for appellee.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

Appellant was enjoined by the decree below from interfering with the operation of lines owned by the appellee company. The controversy arose under the act of Congress approved July 24, 1866 (14 Stat. 221, c. 230, Rev. Stat., § 5263, *et seq.*), which declares that companies accepting its provisions "shall have the right to construct, maintain, and operate lines of telegraph . . . over and along any of the military or post roads of the United States," provided they do not interfere with ordinary travel. Appellant insists that, as construed and applied below, the statute transcends the powers granted to Congress by the Constitution; and there is sufficient substance in the claim to give us jurisdiction.

The appellee was incorporated under the laws of Massachusetts, April 7, 1884. Immediately thereafter it filed with the Postmaster General a written acceptance of the restrictions and obligations prescribed by the act of July 24, 1866, and constructed lines of wires strung upon poles across the Commonwealth of Massachusetts and particularly along certain streets and roads in the Town of Essex. These have been continuously operated in connection, on the east, with cables reaching foreign countries, and, on the west, with wires leading to all parts of the Union; for a long time they have constituted an important part of the Postal Telegraph and Cable system; and over them pass great numbers of interstate and foreign

messages, many being transmitted for the United States under official regulations.

The especially pertinent provisions of the Massachusetts laws relating to companies incorporated for transmitting intelligence by electricity, in force during 1884 and long thereafter, appear in Public Statutes, chapter 109, §§ 2, 3, 15, and chapter 27, § 49, and are as follows:

"Each company may under the provisions of the following section construct lines of electric telegraph upon and along the highways and public roads, and across any waters within the Commonwealth, by the erection of the posts, piers, abutments, and other fixtures (except bridges) necessary to sustain the wires of its lines; but shall not incommode the public use of highways or public roads, nor endanger or interrupt the navigation of any waters."

"The Mayor and Aldermen or Selectmen of a place through which the lines of a company are to pass shall give the company a writing specifying where the posts may be located, the kind of posts and the height at which, and the places where, the wires may run. After the erection of the lines, having first given the company or its agents opportunity to be heard, they may direct any alteration in the location or erection of the posts, piers, or abutments, and in the height of the wires. Such specifications and decisions shall be recorded in the records of the city or town."

"No enjoyment by a person or corporation for any length of time of the privileges of having or maintaining telegraph posts, wires or apparatus in, upon, over or attached to any building or land of other persons, shall give a legal right to the continued enjoyment of such easements or raise any presumption of a grant thereof."

"The Selectmen of the town may empower citizens of Massachusetts to establish and maintain in such town posts, wires and other apparatus for telegraphic and tele-

phonic communication in conformity with the provisions of Chapter 109."

In *Pierce* v. *Drew*, 136 Massachusetts, 75, 76–77 (1883), the Supreme Court said of chapter 109:

"That it was the intent of the statute to grant to those corporations, formed under the general incorporation laws, for the purpose of transmitting intelligence by electricity, the right to construct lines of telegraph upon and along highways and public roads upon the locations assigned to them by the officers of the municipality wherein such ways are situate, cannot be doubted. . . .

"No right is given these companies to use the highways at their own pleasure, or to compel in all cases, as the plaintiff suggests, locations therein to be given them by the municipal authorities. The second section of the statute is to be construed with the third section, and shows an intention that a legally constituted board shall determine not only where, but whether, there can be a location which shall not incommode the ordinary public ways, with full power to revise its own doings, and to correct any errors which the practical working of the arrangement may reveal."

The evidence warrants the conclusion that in 1884 appellee made written application to the Essex Selectmen for a right of way, but their records disclose nothing concerning the matter. Directly thereafter, without opposition, the existing lines were constructed along four miles of the town's highways. During many succeeding years no objection appears to have been made to their operation, and, until a short time before this suit was begun, their presence was acquiesced in. Certainly no sort of affirmative action was taken to interfere with them; and there is evidence indicating that half the poles were relocated under direction of a selectman, about 1895, when the electric railway was laid down.

In 1902, repairs being needed, the selectmen were peti-

tioned to locate the poles and license their future maintenance. This request was not granted. In 1905, repairs having become imperative, another petition for a location was presented. This was refused; officers of the town then denied appellee's right to use the highways, and threatened to prevent repairs, by force if necessary, and to take action against future operation of the lines within its limits. Thereupon, July 31, 1905 (twenty-one years after original construction), the telegraph company, relying on the act of 1866, commenced this proceeding in the District Court, seeking an injunction against threatened interference. By a temporary order granted September 5, 1905, the town, its officers, agents and employés, were "enjoined and restrained, until the further order of this court, from interfering in any manner whatsoever with the complainant's line of telegraph in said defendant town, or with the location or re-location by the complainant on the roads and highways now occupied by its said line of telegraph in said defendant town, or with the re-setting of the poles of said line in said town by the complainant, or with the complainant's. making such repairs and changes as are necessary to put said line in a condition of safety and efficiency, or from in any manner causing or allowing any other person or corporation to interfere with or stop such location, re-location, re-setting, repairs or changes by the complainant."

Answering, September 26, 1905, appellant claimed the lines were constructed without any authority whatsoever and denied the company's right, under the act of 1866 or otherwise, to maintain or operate them. A cross bill was also presented, alleging unlawful use of the ways and praying that the company be restrained therefrom until a franchise shall be obtained as provided by state laws.

No motion was ever made to dissolve the temporary injunction. The cause coming on for final hearing upon pleadings and proofs in 1913 (twenty-nine years subse-

quent to construction), the court held that the act of 1866
protected the lines from interference, and rendered a
decree dismissing the cross bill, sustaining the original
bill, and awarding a perpetual injunction substantially in
the language of the preliminary order dated September 5,
1905.

Appellant now maintains that the court below errone-
ously construed and applied the act of 1866 and undertook
to bestow upon the telegraph company rights in its high-
ways beyond the power of Congress to grant; that its
ways are occupied without lawful authority, either state
or Federal; that such occupation constitutes a continuing
nuisance; and that the original bill should have been
dismissed, leaving the town free to act as seemed advisable.

Many opinions of this court establish beyond question
the validity and point out the general purposes of the
act of 1866. "It substantially declares, in the interest
of commerce and the convenient transmission of intelli-
gence from place to place by the Government of the
United States and its citizens, that the erection of tele-
graph lines shall, so far as state interference is concerned,
be free to all who will submit to the conditions imposed."
*Pensacola Telegraph Co.* v. *West. Un. Tel. Co.*, 96 U. S. 1,
11. A State has no authority to say that a telegraph
company may not operate lines constructed over postal
routes within its borders. *West. Un. Tel. Co.* v. *Massa-
chusetts*, 125 U. S. 530, 554. A City may not arbitrarily
exclude the wires and poles of a telegraph company from
its streets, but may impose reasonable restrictions and
regulations. *St. Louis* v. *West. Un. Tel. Co.*, 148 U. S.
92, 105; *West. Un. Tel. Co.* v. *Richmond*, 224 U. S. 160,
170. See also *West. Un. Tel. Co.* v. *Pennsylvania R. R.*,
195 U. S. 540; *United States* v. *Union Pacific Ry.*, 160
U. S. 1, 44; *Postal Tel. Co.* v. *Chicopee*, 207 Massachusetts,
341, 343.

If the official records of the selectmen disclosed that,

responding to the petition of 1884, they gave a writing "specifying where the posts may be located, the kind of posts, and the height at which and the places where the wires may run," and if thereafter the telegraph company had placed poles and strung wires accordingly, plainly, we think, under the opinions cited above, such lines would be protected by the act of 1866 against exclusion or other arbitrary action by the town.

With full knowledge of all circumstances, the town authorities permitted the location and construction of lines along the highways, and for more than twenty years acquiesced in their maintenance and operation. The company has expended large sums of money and perfected a great instrumentality of interstate and foreign commerce, in the continued operation of which both the general public and the Government have an important interest. Under similar circumstances it has been determined, upon broad principles of equity, that an owner of land, occupied by a railroad without his previous consent, will be regarded as having acquiesced therein and be estopped from maintaining either trespass or ejectment (*Roberts* v. *Northern Pacific R. R. Co.,* 158 U. S. 1, 11; *Northern Pacific R. R. Co.* v. *Smith,* 171 U. S. 260, 271, 275); and like reasons may demand similar protection to the possession of a telegraph company. A municipal corporation, under exceptional circumstances, may be held to have waived its rights or to have estopped itself. *Randolph County* v. *Post,* 93 U. S. 502, 513; *Boone County* v. *Burlington &c. R. R.,* 139 U. S. 684, 693; *City Railway* v. *Citizens' Railroad,* 166 U. S. 557, 566; *Louisville* v. *Cumberland Telephone Co.,* 224 U. S. 649, 662; Dillon, Municipal Corporations, 5th ed., §§ 1194, 1227.

The streets and highways of Essex are undoubtedly post roads within the meaning of the act of 1866. *West. Un. Tel. Co.* v. *Richmond, supra;* act of March 1, 1884, c. 9, 23 Stat. 3. What rights—if any—in respect of them

were immediately secured by the telegraph company through acceptance of that act, we need not consider. It entered upon those now occupied notoriously, peacefully and without objection, and has developed there a necessary means of communication. The statute must be construed and applied in recognition of existing conditions and with a view to effectuate the purposes for which it was enacted. Among the latter, as stated in *Pensacola Tel. Co.* v. *West. Un. Tel. Co.* and *West. Un. Tel. Co.* v. *Massachusetts, supra,* are the extension and protection of instrumentalities essential to commercial intercourse and the efficient conduct of governmental affairs. In the circumstances, appellee has acquired the same Federal right to maintain and operate its poles and wires along the ways in question that would have attached had the selectmen granted a formal antecedent permit. Commercial transactions and the orderly conduct of governmental business have come to depend on the daily use of these lines and certainly would be as seriously hindered by their severance as if they had been constructed after an official location. There is no suggestion that ordinary' travel is being interfered with; and, having long acquiesced in appellee's peaceful possession, the town may not now rely upon the claim that this was obtained without compliance with prescribed regulations and treat the company as a naked trespasser. Its rights under the Federal law would be violated by the threatened arbitrary interference.

The further claim is here made for the first time that, in any event, the injunction is too broad. In *West. Un. Tel. Co.* .v. *Richmond, supra,* it was pointed out that the act of 1866 does not deprive a municipality of the right to subject telegraph companies occupying its streets to reasonable regulations. The injunction as granted might interfere with action altogether proper and the decree below will be modified by the addition of the words,

"Provided, that nothing herein shall be so construed as to prevent the Board of Selectmen or the Town of Essex from subjecting the location and operation of the company's lines to reasonable regulations." With this modification, it is affirmed. The costs will be charged to appellant.

*Modified and affirmed.*