## Western Union Telegraph Co. v. City of Philadelphia et al.

*Municipal corporations—Ordinances—Mandamus to Mayor to sign agreement with telegraph company as required by ordinance.*

1. Where the council of a city of the first class has passed an ordinance, over the mayor's veto, granting permission to a telegraph company to open certain streets to construct and maintain conduits therein and to lay and operate cables for telegraph purposes, and providing that the company should enter into an agreement with the city, satisfactory to the city solicitor, to comply with all ordinances, then in force or that might thereafter be passed, fixing the charges for such occupation of the streets and regulating the laying of conduits and wires, the duty imposed on the mayor of executing the agreement upon the approval of the city solicitor is ministerial, and may be enforced by mandamus.

2. The court has no power to concern itself with the wisdom or propriety of the legislation.

3. That a bill in equity is pending before the court to enjoin the work is no defence to the proceeding by mandamus.

4. The duty imposed by the ordinance upon the company of keeping that part of the street which it may open in repair for a period of five years from the date of such opening is a sufficient consideration for the privilege granted.

5. *Semble.* The streets of Philadelphia are post roads under congressional legislation, and the city cannot deny their use to a telegraph company for the purpose of its interstate business.

Mandamus. C. P. No. 2, Phila. Co., June T., 1922, No. 10017.

*Gill, Guckes & Shrader,* for plaintiff.

*Ernest Lowengrund,* Assistant City Solicitor, and *David J. Smyth,* City Solicitor, for defendants.

STERN, J., Aug. 29, 1922.—Over the Mayor's veto, the Council of the City of Philadelphia, on July 20, 1922, passed an ordinance granting permission to the Western Union Telegraph Company to open certain streets, including Chestnut Street from Third Street to Fifteenth Street, to construct and maintain conduits therein, and to lay and operate cables and wires for telegraph purposes. The ordinance provides certain conditions and regulations for the doing of the work, and includes an obligation on the part of the telegraph company to keep the part of the streets which it opens in repair for a period of five years from the date of such opening. The company is further to maintain for the use of the city the number of ducts in said conduits required under existing ordinances, and it must also remove any of the conduits at any time when the space occupied by them is required by the city for its own use.

As is the usual custom in the case of such ordinances, it is provided therein that the telegraph company shall give a bond that it will faithfully comply with the provisions of the ordinance, and that it shall enter into an agreement, satisfactory to the City Solicitor, to comply with all ordinances now in force or that may hereafter be passed fixing the charges for such occupation of the street, and regulating the laying of conduits and wires under the streets.

In compliance with the ordinance, an agreement was prepared and executed by the telegraph company and approved by the City Solicitor and by the Director of the Department of Public Works. The Mayor, however, has refused to execute it on behalf of the city, and has revoked the permit, previously given, to proceed with the work of construction.

The Public Service Commission of the State has found and determined that the granting of the company's application for approval of the ordinance contract is necessary and proper for the service, accommodation, convenience and safety of the public, and has issued its certificate of public convenience to that effect.

The present proceeding is by the telegraph company against the Mayor of Philadelphia as principal defendant, for a writ of mandamus to compel him to sign the agreement required by the ordinance, and for the reissuing of the necessary permit for the doing of the work.

In an answer filed by the Mayor to the plaintiff's petition, it is averred (1) that the ordinance is "ill-advised" and "improper," and does not provide for any compensation to the city for the opening of Chestnut Street; (2) that a bill in equity is pending before the court for the enjoining of the said work; and (3) that there is no duty on the part of the Mayor to execute the said agreement.

The plaintiff has demurred to this answer.

1. As to the first of the defences urged, it is obvious that the court has no power to concern itself with the wisdom or the propriety of legislation. To attempt to do so would be to set itself up as a super-legislative body and to destroy the division of executive, legislative and judicial functions which is the backbone and the pride of our form of government. It is for the legislative body, and for it alone (subject to the veto power of the executive), to see to it that the ordinances which it passes are fair, well-considered and for the greatest good of the greatest number of citizens. When, in the opinion of the majority of the community, this duty has been neglected or disregarded, the avenue for redress is to be sought, not in the courts, but at the polling-places.

The court, therefore, cannot enter into a discussion as to whether or not the defendants are justified in their characterization of the ordinance as "ill-advised" and "improper." The council apparently believes that the improvement in the speed, accuracy and economy of telegraphic service for the public benefit that will result from the granting of this privilege, in part at least warrants the permission given, and that the regulations safeguarding its exercise constitute sufficient protection against its abuse, whereas the Mayor is of the opinion that a monetary rental should be exacted for the use of the conduits. This is purely a matter of economic and municipal policy. The court is concerned only with the question of legality.

The defendants contend, however, that the ordinance is illegal and void because it fails to provide for a definite or concrete consideration to the city for the privilege granted. Assuming, for the moment, that such consideration is required, it would seem sufficient to point out that, in addition to the obligation of the plaintiff company to maintain and preserve wires and ducts for the use of the city and to hold itself amenable to such charges for occupation of the street as may at any time hereafter be imposed, there is a definite provision requiring it to keep such part of the street as is opened by it in repair for a period of five years from the date of such opening. This, from a legal standpoint, constitutes a valid and specific consideration; whether it is adequate or not is, as above pointed out, not relevant to the investigation to which a judicial inquiry is limited.

Even apart from this, there would seem to be a grave question, to say the least, as to whether the city is *obliged* to exact a monetary consideration for the grant of the permission to an interstate company to occupy the city streets. The plaintiff is a telegraph company which is given the right under the Act of Congress of July 24, 1866 (Revised Statutes, § 5263), to construct and operate lines of telegraph along any of the post roads of the United States. Section 3964 of the Revised Statutes (Act of Congress of June 8, 1872) provides that every letter-carrier route established in any city or town is a post road. By the Act of Congress of March 1, 1884, 23 U. S. Stat. 3), all public roads and highways are declared to be post roads. The streets of

DISTRICT AND COUNTY REPORTS. 57

Western Union Telegraph Company *v.* City of Philadelphia et al.

Philadelphia are undoubtedly post roads within the meaning of this congressional legislation: Essex *v.* New England Telegraph Co., 239 U. S. 313; Western Union Telegraph Co. *v.* Richmond, 224 U. S. 160. The result is that the city cannot deny to such a telegraph company the right to use municipal streets for the purpose of the operation of its business. What it may do, however, is to impose reasonable restrictions and regulations upon such use (Essex *v.* New England Telegraph Co., 239 U. S. 313; New Castle City *v.* Central District and Printing Telegraph Co., 207 Pa. 371; Duquesne Light Co. *v.* City of Pittsburgh, 251 Pa. 557), including the imposition of a rental charge, provided the same be not excessive nor unreasonable: St. Louis *v.* Western Union Telegraph Co., 148 U. S. 92. The defendants now contend that the city *must* impose such a charge, but the City Solicitor frankly admits that he knows of no legal authority which has ever so held, notwithstanding the fact that similar privileges to telegraph, telephone and lighting companies have been constantly granted. There would seem to be quite a difference between the grant of a license to use the public highways and an arbitrary donation of public funds or other tangible public property. The highways are primarily for the purposes of the transportation of persons and property and for the physical and electrical transmission of communications, power, heat and light. The granting of privileges to accomplish those purposes results presumably in public benefits which must be subserved if the inhabitants of the city are to receive the most efficient and economical advantages of modern inventions and appliances. Such resulting benefits may render the obtaining of a money return of comparative insignificance. The degree of eagnerness, on the one hand, of a public utility to obtain a specific use of the streets, and the advantages, on the other, which will accrue to the public from the granting of such a privilege are varying factors which should determine the terms of ordinances and agreements bestowing such rights, and which must be weighed and passed upon by the law-making body in each instance. Whether the discriminatory power of municipal councils in this regard should be regulated and controlled by statutory or constitutional limitations is for the progressive political intelligence of the people to determine, but under the law as it now exists the court knows of no authority or power possessed by it to declare that an ordinance is invalid because a definite and immediate monetary return is not made the consideration for the grant of a license to utilize a public highway, especially in the case of an interstate corporation.

2. The defendants' contention that there is now a bill pending before the court, brought by certain property owners to enjoin the Mayor from signing the agreement in controversy, would seem to be of no moment, inasmuch as apparently the same questions are involved in each case; and if the legal principles herein enunciated are correct they necessarily determine the disposition of the equity proceeding. It is obvious that only one case can be decided at a time, and there is no more reason why the mandamus proceeding should wait upon the disposition of the equity suit than *vice versa.*

3. The ordinance being legally valid, there is no question as to the right and duty of the court to compel the execution of the agreement therein provided for. Although originally vetoed, the ordinance, when passed over the executive's veto, has the same force in law as if it had been signed by the Mayor. The execution of the agreement calls for no act of discretion upon the part of the signatories. All that the ordinance requires is that the agreement should embody the obligation on the part of the telegraph company to comply with the ordinances fixing the charges for the occupation of the street.

The form of agreement which has been submitted to the Mayor does so provide, and it has been approved by the City Solicitor as stipulated in the ordinance. It contains no obligation or undertaking whatever upon the part of the city, and nothing to which the executive authority of the city can, in the exercise of discretion, object. Indeed, the defendants do not contend that there is any objectionable clause or omission in the agreement, assuming that the ordinance itself is valid. Under these circumstances, the signing of the agreement is a ministerial act, and as such the subject of mandamus. To hold otherwise would be to allow an arbitrary disregard of a city ordinance. This principle was fully explained and enforced in Chelten Trust Co. v. Blankenburg, 241 Pa. 394, and Coyne v. Prichard, 272 Pa. 424, and is based upon law expressed at least as long ago as in the classic decision of Chief Justice Marshall in Marbury v. Madison, 1 Cranch, 137.

For the reasons above expressed, it is ordered and decreed that judgment on the demurrer be entered for the plaintiff, and that a peremptory writ of mandamus issue, directed to the defendant, J. Hampton Moore, Mayor of Philadelphia, to sign on behalf of the City of Philadelphia the agreement referred to in the plaintiff's petition and required to be entered into by the Western Union Telegraph Company with the said City of Philadelphia in the Ordinance of the Council of Philadelphia passed July 20, 1922; and directed to the defendant, Frank H. Caven, Director of Public Works of the City of Philadelphia, and to the defendant, Fred C. Dunlap, Chief of the Bureau of Highways of said Department of Public Works, to issue a permit to the said Western Union Telegraph Company to open the streets set forth in said ordinance of council, and to construct conduits and manholes therein and to lay cables, wires, electrical conductors and pneumatic tubes for telegraphic purposes in said conduits in accordance with the permission granted and under and subject to the terms and conditions of the said ordinance of council.