### DELAWARE R. CO. et al. v. WEEKS, Secretary of War, et al.

(District Court, D. Delaware. August 15, 1923.)

No. 509.

1. **Eminent domain ⬥⇒47(1)—State statute permitting railroad to build bridge over canal valid.**

   9 Del. Laws, c. 11, as amended by 10 Del. Laws, c. 357, and republished as amended by chapter 358, giving to the Delaware Railroad Company authority to build its railroad over the canal and lands of the Chesapeake & Delaware Canal Company, incorporated by 3 Del. Laws, c. 78, was valid.

2. **Eminent domain ⬥⇒280—Rights of railroad constructing bridge over canal without condemnation or purchase.**

   Where a railroad constructed a bridge over a canal without condemnation, purchase, or grant, but merely by consent, and expended large sums of money in piers and abutments upon the lands of the canal company, the canal company may not maintain either trespass or ejectment for the entry and is restricted to a suit for damages, and the railroad obtains a continuous right of support for its piers and abutments; but the canal company and its successor in title are at liberty to make use of land under the bridge not supporting the piers and abutments.

3. **Eminent domain ⬥⇒317(1)—Government by condemnation of canal obtained only rights of canal company.**

   By condemning the Chesapeake & Delaware Canal under Act of Congress 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 9881a), and River & Harbor Appropriation Act of March 2, 1919, the government did not divest the Delaware Railroad Company of its right to maintain its bridge across the canal property and to have its piers and abutments rest thereon.

4. **Navigable waters ⬥⇒2—Congress may regulate and improve navigation.**

   Congress has power over navigable waters for the purpose of regulating and improving navigation, and it is for Congress to determine when and to what extent its powers shall be brought into activity.

5. **Navigable waters ⬥⇒2—Title to submerged soil subject to servitude of navigation.**

   Title to the submerged soil is always subject to the servitude in respect of navigation created in favor of the federal government by the Constitution.

6. **Navigable waters ⬥⇒20(2)—Construction of bridge under state authority subject to government authority.**

   When one acting under state authority erects a bridge over navigable waters, he does so with a knowledge of the paramount authority of Congress over navigable waters.

7. **Navigable waters ⬥⇒2—Power of Congress extends to the whole expanse of stream.**

   The power of Congress extends to the whole expanse of a navigable stream and is not dependent upon the depth or shallowness of the water.

8. **Constitutional law ⬥⇒62—Navigable waters ⬥⇒3—Statute providing for removal of obstructions to navigation not delegation of legislative or judicial power.**

   Act March 3, 1899, § 18 (Comp. St. § 9970), providing for the removal or alteration of bridges determined by the Secretary of War, after notice

---

⬥⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and hearing, to be an unreasonable obstruction to navigation, is not unconstitutional as a delegation of legislative or judicial power to an executive officer.

**9. Navigable waters ⬳20(6)—Decisions of Secretary of War concerning obstructions held not subject to judicial review.**

Decisions of the Secretary of War made within the scope of Act March 3, 1899, § 18 (Comp. St. § 9970), providing for the removal or alteration of bridges determined to be unreasonable obstructions to navigation, are not subject to judicial review.

**10. Eminent domain ⬳2(10)—Requiring alterations to bridge over navigable waters not "taking of private property for public use."**

Requiring alterations to a bridge to secure navigation against unreasonable obstructions under Act March 3, 1899, § 18 (Comp. St. § 9970), when done by the Secretary of War acting within the scope of his power, is not a "taking of private property for public use" within the meaning of the Fifth Amendment to the Constitution, but the actual taking of upland is not, however, subject to the same rule, and compensation must be paid therefor.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Taking (In Eminent Domain).]

**11. Navigable waters ⬳20(6)—Secretary of War held entitled to require alteration of bridge over canal.**

Under Act March 3, 1899, § 18 (Comp. St. § 9970), it was within the power of the Secretary of War to find that the pier of the bridge of the Delaware Railroad Company within the canal proper of the Chesapeake & Delaware Canal and the part of the bridge over the waters of the canal were unreasonable obstructions to navigation and to order their removal or alteration, and that for such alteration or removal the railroad was not entitled to compensation; but this was not true as to piers and abutments on the upland.

**12. Navigable waters ⬳20(6)—Secretary of War held entitled to require alteration of bridge over canal.**

Under Act March 3, 1899, § 18 (Comp. St. § 9970), the Secretary of War had power to require alteration of the Delaware Railroad Company bridge over the Chesapeake & Delaware Canal, and to give notice that the bridge "will be an unreasonable obstruction to the free navigation of said waterway when improved," as against the objection that the Secretary's finding must be based upon the conditions as they exist at the time he acts; it appearing that the canal was then being improved, and it not being necessary for the Secretary of War to wait until after the improvements to all the remaining parts of the canal had been fully completed before making his findings.

**13. Navigable waters ⬳20(6)—That alteration of bridge be a hardship immaterial.**

That the cost of rebuilding a bridge will be great and that the imposition of this burden without compensation will be a hardship on a railroad is immaterial, where the Secretary of War under Act March 3, 1899, § 18 (Comp. St. § 9970), orders the alteration; it being for Congress to determine whether under the circumstances of a particular case justice requires that compensation be made.

**14. Courts ⬳302—Suit by railroad against Secretary of War held not "suit against United States."**

Suit by railroad against the Secretary of War and engineer in charge of improvements in a canal to enjoin the removal of a bridge and threatened criminal prosecution is not a suit against the United States, and the complainants are entitled to the protection of the federal district court.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the Delaware Railroad Company and another against John W. Weeks, Secretary of War, and others. Relief granted in part.

John Biggs, and P. Warren Green, both of Wilmington, Del., for plaintiffs.

James H. Hughes, Jr., of Wilmington, Del., for defendants.

MORRIS, District Judge. Delaware Railroad Company and the Pennsylvania Railroad Company, owner and lessee, respectively, of a railroad bridge over the Chesapeake & Delaware Canal, instituted this suit against the Secretary of War, the engineer in charge of improvements being made to the canal, and the United States attorney for the district of Delaware, to enjoin the removal of the bridge by the defendants or their compelling, by a resort to criminal proceedings, its removal or alteration by the plaintiffs, unless and until compensation and damages for such removal or alteration be paid or provided for.

The institution of the suit followed a demand made upon the plaintiffs by the Secretary of War that the bridge be removed, or altered, in conformity with submitted specifications, so as to render navigation through the canal when enlarged reasonably free and unobstructed, notice by the United States attorney that failure to comply with the demand would result in the commencement of criminal proceedings against the plaintiffs, and the arrival at a point near the bridge of the advancing operations of enlargement in charge of the engineer. In support of his demand the Secretary of War relies upon the ownership by the United States of the canal and lands spanned by the bridge and a statute of the United States (30 Stat. 1153 [Comp. St. § 9970]) declaring that whenever the Secretary of War has good reason to believe that any bridge constructed over any of the navigable waterways of the United States is an unreasonable obstruction to the free navigation of such waters on account of insufficient height, width of span, or otherwise, it shall be the duty of the Secretary to give notice to the persons or corporations owning or controlling such bridge so to alter the same as to render navigation through or under it reasonably free, easy, and unobstructed. Willful failure or refusal to remove the bridge or comply with the order of alteration is made a misdemeanor. The penal provisions of that act are those to which the United States attorney threatened to resort. Compliance with the order would render useless the present bridge, costing many thousands of dollars. The erection of the specified new bridge would cost upwards of $300,000. No compensation to the plaintiffs has been paid, tendered, or provided for, the defendants contending that under the law the plaintiffs are entitled to none.

A motion for a preliminary injunction was made. It was heard upon bill, answer, affidavits, and exhibits filed by the respective parties. Prior to decision the motion was withdrawn pursuant to a stipulation by counsel that no criminal proceedings would be instituted against the complainants nor the bridge, its piers or abutments interfered with pendente lite, and that final decree should be entered upon the evidence then before the court. The cause is now before the court for final decree upon the stipulated record.

The primary questions arising from the record are: What interest did the plaintiffs have in the canal properties, spanned by the bridge, immediately prior to the acquisition of those properties by the United States; whether the plaintiffs were divested of that interest by the condemnation proceedings through which the United States acquired title to the canal properties; whether the Secretary of War has power under the existing facts to direct the removal or alteration of the bridge; and whether this suit may be maintained against the defendants. These questions will be considered in their order.

The canal, which crosses the head of the Delaware, Maryland, and Virginia peninsula and connects the waters of the Chesapeake and the Delaware Bay, was constructed by the Chesapeake & Delaware Canal Company, incorporated for that purpose by a statute passed by the General Assembly of the State of Delaware January 29, 1801 (3 Del. Laws, c. 78). By that act the canal company was empowered to acquire lands necessary for the construction and operation of that portion of the canal passing through this state and to have perpetual succession. The Legislature reserved the right "to enact laws for the erecting and maintaining of bridges across the canal at the expense of the said company." Lands were acquired by the canal company and the canal constructed. Where crossed by the Delaware Railroad those lands have a width of approximately 500 feet. The canal itself is at that point probably less than 100 feet in width.

The Delaware Railroad Company was created by an act of the General Assembly of the State of Delaware passed June 26, 1836 (9 Del. Laws, c. 11; amended 10 Del. Laws, c. 357; republished as amended 10 Del. Laws, c. 358). It was empowered to have perpetual succession; to "purchase, receive, have, hold and enjoy to them and their successors, lands, tenements, and hereditaments, * * * and all estate, real, personal and mixed of what kind or quality soever"; to acquire lands by condemnation; and to locate and construct a railroad of one or more tracks from a point lying north of the canal to the southern boundary of the state. The act of incorporation further provides:

"Sec. 15. That if in the location of the said railroad, it shall be found necessary to pass over any navigable river, canal or creek by a bridge or other edifice, it shall be the duty of said company to construct and keep in repair a sufficient pass or draw in said bridge or edifice over the channel or deepest part of said river, canal or creek for the purpose of letting vessels pass and repass through the same, which draw shall, at all times on the approach of any masted vessel or vessels, be drawn at the cost of the said railroad company, so as to admit the free passage of such vessel or vessels. * * *"

The railroad was built after the canal had been constructed. At the point at which the railroad crosses the canal property there is a natural depression only partly occupied by the canal. The bridge, which spans the depression, was erected about 1855 to carry a single track. It is about 250 feet long. It is supported between the outer abutments by three piers—a center pier upon which the draw is turned horizontally, and a north and a south rest pier. The piers and abutments now remain as originally erected with the exception that in 1901 the piers

and abutments were lengthened to accommodate an additional track. No deed from the canal company to the railroad company for the land occupied by the piers and abutments has been produced. Nor does the record show that the railroad's right of way over the canal property was condemned. The record does show, however, that the canal company in 1854 appointed a committee to attend to the interests of the company in the location of the "Delaware Railroad Bridge intended to cross the canal," and that the committee reported that it had visited the canal and approved the site of the bridge as proposed by the railroad company. Drawings showing the original piers and abutments, together with their proposed enlargements to accommodate an additional track, were approved in writing thereon by the officers of the canal company in 1900 and in 1901. The alterations were made in conformity with those drawings.

[1, 2] The Delaware Railroad Company contends that the foregoing facts disclose that it acquired by adverse possession a fee-simple title to the lands upon which the piers and abutments of its bridge rest. The defendants, on the other hand, contend that the railroad company had only a license to use the lands, revocable at any time by the owner of the canal property. The true rights of the railroad company are found, I think, not in either of these extremes, but between them. The statute of its creation empowered the railroad company to purchase or to condemn the necessary lands for the purpose of locating and constructing its railroad. That statute likewise gave to that company authority to build its railroad over the canal and the lands of the canal company. That was a valid grant of power. West River Bridge Co. v. Dix, 6 How. 507, 12 L. Ed. 535; Cincinnati v. Louis. & Nash. R. R. Co., 223 U. S. 390, 400, 32 Sup. Ct. 267, 56 L. Ed. 481. Apparently the railroad company before building its bridge over the property of the canal company neither purchased nor condemned any land of the latter company. But with the knowledge of the canal company the railroad company entered upon the lands of the latter and by the expenditure of large sums of money built and later enlarged a bridge having its piers and abutments upon those lands. In neither instance did the canal company object. In each instance it expressly acquiesced. The right of passage has been used constantly for upwards of 65 years. It is a well-established rule of law that, under such circumstances, the landowner may not maintain either trespass or ejectment for the entry and is restricted to a suit for damages. Roberts v. Northern Pacific Railroad, 158 U. S. 1, 15 Sup. Ct. 756, 39 L. Ed. 873; Northern Pacific Railroad Co. v. Smith, 171 U. S. 260, 271, 275, 18 Sup. Ct. 794, 43 L. Ed. 157; New York City v. Pine, 185 U. S. 93, 22 Sup. Ct. 592, 46 L. Ed. 820; Essex v. New England Tel. Co., 239 U. S. 313, 321, 36 Sup. Ct. 102, 239 U. S. 313, 60 L. Ed. 301.

I do not find any local authority in conflict with the principle of these cases. Obviously, therefore, the railroad company acquired through its acts and the acquiescence of the canal company therein a substantial interest in the lands of the canal company taken into its possession. That possession was not subject to termination at the will of the canal company or its successor in title. Yet that interest did not at the time of its acquisition or thereafter amount to a fee-simple title, for the pos-

session was permissive, not adverse, and there is no evidence that the railroad company at any time prior to the demand of the Secretary of War held possession under claim to a fee-simple title. Ricard v. Williams, 7 Wheat. 59, 105, 5 L. Ed. 398; Kirk v. Smith, 9 Wheat. 241, 6 L. Ed. 81. Still, it is clear that that interest conferred upon the railroad company, as against the owner of the servient tenement, a continuous right of passage and, hence, a continuous right of support for the piers and abutments of its bridge. Such interest is a right of way and has, as said by the Supreme Court in Western Union Tel. Co. v. Penn. R. R., 195 U. S. 540, 570, 25 Sup. Ct. 133, 141 (49 L. Ed. 312, 1 Ann. Cas. 517), "the substantiality of the fee, and it is private property even to the public in all else but an interest and benefit in its uses. It cannot be invaded without guilt of trespass. It cannot be appropriated in whole or part except upon the payment of compensation. In other words, it is entitled to the protection of the Constitution, and in the precise manner in which protection is given. It can only be taken by the exercise of the powers of eminent domain, and a condition precedent to the exercise of such power is, we said, in Sweet v. Rechel, that the statute conferring it make provision for reasonable compensation to the owner of the property taken." It must be observed, however, that the railroad company has occupied or had possession of not all the land under its bridge but only those parts upon which the piers and abutments rest. The owner of such unoccupied portions, the canal company or its successor in title, was and is at liberty, I think, to make any use thereof that would or will not interfere with the support of the piers or abutments. Barclay v. Howell, 6 Pet. 498, 8 L. Ed. 477; Perley v. Chandler, 6 Mass. 454, 4 Am. Dec. 159.

[3] Title to the property of the Chesapeake & Delaware Canal Company was acquired in 1919 by condemnation proceedings had in this court pursuant to an act of Congress of 1917 (40 Stat. 253 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 9881a]) and provision for payment made in the River and Harbor Appropriation Act of March 2, 1919 (40 Stat. 1275, 1277). The answer of the defendants seems to indicate the defendants' position to be that the railroad company was divested of its right of way by the condemnation proceedings. The brief of the plaintiffs is replete with authority and reasoning to show the unsoundness of that position. The brief of the defendants, filed after plaintiffs' brief was filed, makes no reference either to the contention seemingly advanced in the answer or to that portion of the plaintiffs' brief dealing therewith. Consequently, I shall presume that it was not the purpose of the defendants to raise this issue by their answer, or, if it was, that they subsequently abandoned it. I am more inclined to this view by reason of my conviction that one of the positions taken by the plaintiffs in this connection is dispositive of the question. I therefore hold, without further statement of the reasons therefor, that the United States acquired the canal property subject to the burthen of the railroad and that, merely as owner, the rights of the United States in the canal property are with respect to the bridge, its piers and abutments not greater than or different from those of the canal company during its ownership.

[4-12] Did the Act of March 3, 1899, § 18 (30 Stat. 1153), confer upon the Secretary of War power to require, under the existing facts and without compensation paid or provided for, the removal or alteration of the bridge? This question presents many subordinate questions most of which have been settled by decisions of the Supreme Court. The provisions of the statute with respect to notice and hearing were complied with. That Congress has power over navigable waters for the purpose of regulating and improving navigation is no longer open to debate. Gilman v. Philadelphia, 3 Wall. 713, 731, 18 L. Ed. 96; Gibson v. United States, 166 U. S. 269, 17 Sup. Ct. 578, 41 L. Ed. 996; Scranton v. Wheeler, 179 U. S. 141, 21 Sup. Ct. 48, 45 L. Ed. 126; United States v. Chandler-Dunbar Co., 229 U. S. 53, 33 Sup. Ct. 667, 57 L. Ed. 1063; Greenleaf Lumber Co. v. Garrison, 237 U. S. 251. It is for Congress to determine when and to what extent its powers shall be brought into activity. Gilman v. Philadelphia, 3 Wall. 713, 18 L. Ed. 96; United States v. Chandler-Dunbar Co., 229 U. S. 53, 33 Sup. Ct. 667, 57 L. Ed. 1063. Title to the submerged soil is always subject to the servitude in respect of navigation created in favor of the federal government by the Constitution. Gibson v. United States, 166 U. S. 269, 17 Sup. Ct. 578, 41 L. Ed. 996; Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523. When one acting under state authority erects a bridge over navigable waters he does so "with the knowledge of the paramount authority of Congress" over navigable waters. Greenleaf Lumber Co. v. Garrison, 237 U. S. 251, 35 Sup. Ct. 551, 59 L. Ed. 939. The power of Congress extends to the whole expanse of a navigable stream and is not dependent upon the depth or shallowness of the water. Greenleaf Lumber Co. v. Garrison, supra; Scranton v. Wheeler, 179 U. S. 141, 21 Sup. Ct. 48, 45 L. Ed. 126. Section 18 of the Act of March 3, 1899, providing for the removal or alteration of bridges determined by the Secretary of War, after notice and hearing, to be an unreasonable obstruction to navigation, is not unconstitutional as a delegation of legislative or judicial power to an executive officer. Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523; Monongahela Bridge v. United States, 216 U. S. 177, 30 Sup. Ct. 356, 54 L. Ed. 435; Hannibal Bridge Co. v. United States, 221 U. S. 194, 31 Sup. Ct. 603, 55 L. Ed. 699. Decisions of the Secretary of War made within the scope of the act and pursuant to the procedure prescribed therein are not subject to judicial review. Monongahela Bridge v. United States, 216 U. S. 177, 30 Sup. Ct. 356, 54 L. Ed. 435; United States v. Chandler-Dunbar Water Co., 229 U. S. 53, 33 Sup. Ct. 667, 57 L. Ed. 1063; Greenleaf Lumber Co. v. Garrison, 237 U. S. 251, 35 Sup. Ct. 551, 59 L. Ed. 939. Requiring alterations to a bridge to secure navigation against unreasonable obstructions, when done by the Secretary of War acting within the scope of his power, is not a taking of private property for public use within the meaning of the Fifth Amendment to the Constitution. Union Bridge Co. v. United States, 204 U. S. 364, 27 Sup. Ct. 367, 51 L. Ed. 523; Monongahela Bridge Co. v. United States, 216 U. S. 177, 30 Sup. Ct. 356, 54 L. Ed. 435; Hannibal Bridge Co. v. United States, 221 U. S. 194, 31 Sup. Ct. 603, 55 L. Ed. 699; Louisville Bridge

Co. v. United States, 242 U. S. 409, 37 Sup. Ct. 158, 61 L. Ed. 395. The actual taking of upland is not, however, subject to the same rule. "That compensation must be made for the upland taken is not disputable." United States v. Chandler-Dunbar Co., 229 U. S. 53, 60, 33 Sup. Ct. 667, 671 (57 L. Ed. 1063).

It but remains to apply these principles to the facts of the case at bar. The Chesapeake & Delaware Canal has at all times since its completion been a navigable waterway. 3 Del. Laws, c. 78, § 10; The Robert W. Parsons, 191 U. S. 17, 24 Sup. Ct. 8, 48 L. Ed. 73. The plaintiffs allege in their bill that all three of the piers upon which the bridge rests "have always been and now are entirely outside of the waterway or canal." The defendants do not make any denial of this allegation with respect to, two of the piers. They do deny it, however, as to the south pier and aver that it is in the waterway and completely surrounded by the water of the canal. The plaintiffs offered no evidence to support the allegation of their bill in this respect. The defendants filed certain photographs which seem to support defendants' position. An inspection by the court, had with the consent of the parties, fully confirmed this view. I find that the south pier is in the canal. It is at the south side of the channel but only slightly south of the middle of the canal. In view of the decisions of the Supreme Court hereinbefore referred to, it inevitably follows, I take it, that it is within the statutory power of the Secretary of War to find that the pier in the canal and the part of the railroad bridge above the waters of the canal are unreasonable obstructions to navigation and to order their removal or alteration, and that for such alteration or removal the plaintiffs are not entitled to compensation. The plaintiffs challenge, however, the sufficiency even to this extent of the notice given in that it discloses a finding of the Secretary of War, not that the bridge "is" an unreasonable obstruction, but that "it will be an unreasonable obstruction to the free navigation of said waterway, when improved," in that "the drawspan of which bridge does not conform to the enlarged width of the said waterway." It is true that "the Secretary's finding must be based upon the conditions as they exist at the time he acts." Louisville Bridge Co. v. United States, 242 U. S. 409, 425, 37 Sup. Ct. 158, 61 L. Ed. 395. But the conditions existing at the time the Secretary acted with respect to the bridge of the plaintiffs were that Congress had authorized the purchase or condemnation of the canal and its appurtenances and its improvement. 40 Stat. 253; 40 Stat. 1275, 1277. The canal and the canal properties had been acquired by the United States through condemnation proceedings and the United States was engaged in the work of enlarging and deepening the canal in accordance with the statutory authority. The advancing improvements are now in such close proximity to the bridge that the plaintiffs infer therefrom a threat on the part of the defendants soon to remove the bridge. I think the conditions existing at the time the Secretary acted were sufficient to bring his finding and notice within the scope of the act of 1899, and that it was not necessary for him to wait until after the improvements to all the remaining parts of the canal had been fully completed before making his finding and serving upon the plaintiffs his demand for removal or alteration of the bridge.

I think it equally clear that the defendants may not for the purpose of widening the canal, or otherwise, take without compensation the remaining, or upland, piers and abutments of the bridge or the land necessary for their support, and that the removal by the defendants of such piers and abutments or the bringing about of their removal by the plaintiffs through threats of criminal proceedings would constitute such taking. For the purpose, probably, of forestalling this conclusion, the defendants alleged in the answer:

"That at the point where the said railroad crosses said canal, the canal follows the course of what was originally known as St. Georges river, a navigable stream emptying into the Delaware river."

See C., B. & Q. Railway v. Drainage Comm'rs, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596.

Even this allegation fails to state that the piers and abutments in question are in the bed of that ancient river. The defendants, however, offered no evidence to support their allegation of navigability of the original stream. The canal at that point does occupy a portion of the bottom of a natural depression. But the affidavit of Jacob H. Stadelman and the exhibits annexed thereto, filed by the complainants, conclusively establish that the stream, the headwaters of which originally passed through that depression, was never known as St. Georges river, but as St. Georges creek, and that it was not navigable.

[13] I realize full well that the removal of the pier in the bed of the canal will amount to a practical destruction of the present bridge, that the cost of rebuilding a bridge with a drawspan of sufficient length to extend from bank to bank of the canal will be great, and that the imposition of this burden without compensation may seem at least a hardship. Yet, as said by the Supreme Court in Union Bridge Co. v. United States, 204 U. S. 364, 403, 27 Sup. Ct. 367, 381 (51 L. Ed. 523):

"That consideration cannot affect the decision of the questions of constitutional law involved. It is one to be addressed to the legislative branch of the government. It is for Congress to determine whether, under the circumstances of a particular case, justice requires that compensation be made to a person or corporation incidentally suffering from the exercise by the national government of its constitutional powers."

[14] That this is not a suit against the United States, and that the complainants are entitled to the protection of this court to the extent that their charges have been sustained, are both established, I think, by Philadelphia Co. v. Stimson, 223 U. S. 605, 32 Sup. Ct. 340, 56 L. Ed. 570.

Let a decree in accordance herewith be submitted.