THE STATE OF DELAWARE, upon the relation of J. Gordon Smith, etc., Plaintiff, v. 16.50, 10.04629, 3.34, 1.84, 5.97741, 3.94 and 7.49319 Acres of Land, More or Less, etc., CONRAD MARSH COMPANY, et al., Defendants.

No. 1171, Civil Action, 1960.

THE STATE OF DELAWARE, upon the relation of the State Highway Department, Plaintiff, v. 11.20 Acres of Land, More or Less, etc., WALTER ERHART, et al., Defendants.

No. 1041, Civil Action, 1962.

THE STATE OF DELAWARE, upon the relation of the State Highway Department, Plaintiff, v. 30.85 Acres of Land, More or Less, etc., NEWPORT LAND AND IMPROVEMENT COMPANY, et al., Defendants.

No. 1038, Civil Action, 1962.

(*April* 27, 1964.)

McNEILLY, J., sitting.

*Daniel L. Herrmann* and *William D. Bailey, Jr.* (of Herrmann, Bayard, Brill and Russell) for Plaintiff.

*Clement C. Wood* (of Allmond and Wood) for Defendants.

Superior Court for New Castle County.

McNEILLY, Judge.

The instant proceedings arise out of three condemnation actions involving three contiguous tracts of land in New Castle County. The Plaintiff sometime prior to the year 1960 planned a super highway system for the northern portion of New Castle County, Delaware. This super highway system was to radiate from an interchange complex to be located on a swampy area lying to the South and West of the Delaware State Hospital at Farnhurst. Part of this generally swampy area has been known for generations as "Conrad's Marsh". The State entered into negotiations with the Defendants in the various actions which are before the Court because these Defendants claim to own various portions of this marsh known as "Conrad's Marsh". The Defendants are the Newport Land and Improvement Company, Conrad Marsh Company, whose correct name is "Conrad's Company", and individuals by the name of Walter and Pearl Erhart.

On September 6, 1960 option contracts for the purchase of the various parcels involved were executed between the State and the various named Defendants. Prior to the execution of these option contracts, however, a condemnation action was filed on August 22, 1960 against

Conrad Marsh Company for that particular tract but no condemnation actions were filed as to the other tracts until August 22, 1962 with respect to the Erhart tract and August 21, 1962 with respect to the Newport Land and Improvement Company tract. The option contracts which were executed on September 6, 1960 gave the State the option to purchase the three tracts involved within one year from the date thereof. In each case the putative land owners granted to the State the right of immediate entry. In the Conrad's Company or Conrad Marsh Company contract in which the Conrad Company with the seller the following language was inserted:

"Sellers do hereby grant to the State, without reservation, the right of immediate entry".

In the Newport Land and Improvement Company case, the contract stated the following provision:

"Seller does hereby grant to the State the right of immediate entry upon these premises for engineering and construction work".

In the Erhart case, the contract stated:

"Seller does hereby grant to the State the right of immediate entry upon these premises for engineering and construction work".

In addition, all three contracts contained the following preliminary language:

"WHEREAS, the said Highway Department of the State of Delaware proposes to lay out and construct as a State Highway the road shown on the plan and designated as Contract No. FAI-1 (23 & 24) between Basin Rd. Interchange, and Pennsylvania Railroad".

Following the execution of the option contracts Plaintiff engaged the services of a title searcher and during the year 1961 was advised by him that he was unable to establish good fee simple title to the tracts involved in the Defendants. In the meantime and also during the year 1961 but subsequent to the expiration of the time stated in the option contracts the Plaintiff went forward and commenced the construction of the interchange in question on this land. The Defendants were advised of the difficulties encountered in establishing a good fee simple title. On August 1, 1961 and thereafter there were communications between Plaintiff and Defendants but no effort was made by the State to acquire a formal extension of the option agreements which it permitted to expire on September 6, 1961. Finally on August 21st and 22nd of 1962, as previously stated, the additional condemnations were instituted. On May 24, 1963 applications for an entry of an order of possession nunc pro tunc in each of the three actions were made by the Plaintiff. The applications were for an order of possession nunc pro tunc September 6, 1961 which was the date on which the option contracts expired.

On May 29, 1963 the Defendants filed answers and counter-claims in these various actions. The answers set forth affirmative defenses both with respect to the condemnation action and with respect to the application for the entry of an order of possession. The affirmative defenses recited that the activities of the plaintiff on the land claimed to be owned by the Defendants were without right and were in violation of Defendants' constitutional rights, citing Article 1, Sec. 8, of the Delaware Constitution, *Del. C.* and the Fifth Amendment and the Fourteenth Amendment of the United States Constitution. The answers then went on to assert counter-claims for damages caused by the activities of the Plaintiff on Defendants'

property, following the expiration of the option contracts, in taking out from said tracts quantities of sand, muck and gravel without permission or consent of the Defendants and without paying the Defendants therefor. The Defendants again cited the same Sections of the Federal and State Constitutions which had been cited in the affirmative defense and prayed that damages be awarded them.

It might also be added that in the Conrad Marsh Company answer it was asserted that the taking of a certain portion of the property claimed by the Conrad Marsh Company was not for a public purpose.

For the reasons hereinafter set forth this assertion is a moot question since possession of the entire premises, including this portion, is in the Plaintiff and necessity is therefore irrelevant.

As to the affirmative defenses, the Plaintiff has filed motions to strike and as to the counter-claims Plaintiff has filed a motion for Summary Judgment. The basic questions, therefore, to be decided have to do with whether or not an order of possession nunc pro tunc September 6, 1961 is proper, and, if Defendant is entitled to damages, the measure of such damages.

Defendants contend that the entry of an order of possession nunc pro tunc September 6, 1961 will constitute the taking of Defendant's property without due process of law and without paying just compensation in violation of the Constitutions of the United States and the State of Delaware. On the other hand, Plaintiff contends that the entry of an order of possession nunc pro tunc September 6, 1961 will guarantee the owners of subject property the compensation required by the Delaware and United States Constitutions and that in any event Defendants have no standing to assert objections to the entry of

the orders sought by the Plaintiff since they have been joined in the instant actions not as owners but merely as persons claiming an interest in subject property.

██ It is axiomatic in Delaware law that a party to an action has no standing to challenge the constitutionality of a statute or action taken thereunder when it is not shown that a right of the complainant is affected thereby. In the often cited opinion in *Conrad v. State,* 2 Terry 107, 41 Del. 107, 16 A.2d 121, 126 (1940), Judge Rodney defined the rule as follows:

"Now few principles could be clearer or the authorities more uniform than those which state that a court will not listen to an objection made to the constitutionality of an act by a party whose rights it does not affect, and who has therefore no interest in defeating it."

[3] The Defendants here were dealth with by the Plaintiff as the owners and possessors of the land in question. Following the initial negotiations between the parties, Plaintiff was unable to find through a search of the land records for New Castle County that Defendants were the owners in fee simple of subject premises, but, regardless of record title, there never has been any dispute nor question raised concerning the fact that Defendants were in open, notorious and exclusive possession of these properties at all times prior to Plaintiff's entry thereon. To remove them from this prior right to possession without just compensation would clearly, adversely and injuriously affect their interests and consequently they do have standing under Judge Rodney's rule to assert their objections.

██ Just compensation should be assessed in terms of the fair market value of the premises, and in order that the compensation be truly "just", the fair market value

of the property must be assessed with respect to the condition of the land immediately preceding the taking.

Plaintiff claims that the taking of the premises occurred when it entered thereon pursuant to the various grants of the option agreements and from that time the land was permanently appropriated to the creation of the public project then involved. The Defendants agree that possession of the land had been given Plaintiff under the terms of the option agreements for the purpose of going on that land to build a road and that they still have no objection to this. They contend, however, that this permissive entry into possession did not constitute a "taking" but merely gave Plaintiff a limited license to enter the premises to construct a road and that the appropriation of sand, muck and gravel which all took place after the option contracts had expired, exceeded Plaintiff's authority to the detriment and damage of Defendants for which they should be compensated.

The intent of the parties is clear under the terms of the option agreements which gave Plaintiff the immediate right of entry prefaced uniformly in the contracts by the provision: "Whereas, the said Highway Department of the State of Delaware proposed to lay out and construct as a State Highway the road shown on the plan and designated as Contract No. FAI-1 (23 and 24) between Basin Rd. Interchange and Penna. Railroad". Plaintiff could move forward at any time thereafter to lay out and construct its highway but the ownership of the property itself was to remain in Defendants until Plaintiff either took up its option or condemned.

In reviewing the provisions of the option agreements it seems to me that in addition to the one year options to purchase contained therein the owners also intended to grant unto the state a license to enter the land in question

for the purpose of laying out and constructing a highway. This is not denied by the owners who have stated through counsel "* * *, at no time were we opposed to the building of the road. We were never opposed to the building of the road. We are not opposed to the building of the road now * * *." Obviously then the question resolves itself around the extent of the permission and authority to enter for the limited purpose defined. It is my opinion that this license included the authority to move, remove, and use whatever sand, muck and gravel within the confines of the land in question, was necessary for engineering and construction purposes, and that this land was appropriated to public use immediately upon Plaintiff's entry into possession.

It is also a well established rule of law that a land owner cannot acquiesce in the entry upon land and stand by without protest with respect to the activities of the entrant upon the land and later complain of those same activities. The U. S. Supreme Court in *Roberts v. Northern Pacific Railroad Co.*, 158 U.S. 1, 11, 15 S.Ct. 756, 758, 39 L.Ed. 873 (1894) states the rule:

"* * * it has been frequently held that if a landowner, knowing that a railroad company has entered upon his land, and is engaged in constructing its road without having complied with the statute, requiring either payment by agreement or proceedings to condemn, remains inactive, and permits them to go on and expend large sums in the work, he will be estopped from maintaining either trespass or ejectment for the entry, and will be regarded as having acquiesced therein, and be restricted to a suit for damages. * * *"

Judge Morris of this Bar adhered to the rule in the District Court for the District of Delaware in *Delaware R. Co. v. Weeks,* 293 F. 114, 118 (D.Del.1923) in which

he held concerning the construction of a railway on property belonging to a canal company:

"* * * Apparently the railroad company before building its bridge over the property of the canal company neither purchased nor condemned any land of the latter company. But with the knowledge of the canal company the railroad company entered upon the lands of the latter and by the expenditure of large sums of money built and later enlarged a bridge having its piers and abutments upon those lands. In neither instance did the canal company object. In each instance it expressly acquiesced. The right of passage has been used constantly for upwards of 65 years. It is a well established rule of law that, under such circumstances, the landowner may not maintain either trespass or ejectment for the entry and is restricted to a suit for damages. * * *"

Even assuming that the license to enter did not include the authority to move, remove and use whatever sand, muck and gravel within the confines of the land in question was necessary for engineering and construction purposes, as I have held in this case, Defendants might not now bring an action against the Plaintiff as a trespasser ab initio or as a trespasser at all under the doctrines herein set forth.

The measure of damages in such a case as this is set forth in the charge of Justice Carey in the case of *State of Delaware v. 5.97752 acres of land*, No. 740 C.A., 1958. (Unreported).

"This brings us to one of the basic points of this case. The owners contend that the market value of the land as of July, 1958 was enhanced because the land contained deposits of gravel and that the best and most valuable use of that land and of the land taken was for use as a

gravel pit, and so, in ascertaining the fair market value of land containing gravel deposits, if you determine that the best and most valuable use of the land taken for use as a gravel pit you should consider any evidence before you as to the quantity of the gravel therein, the quality of it and the value of the gravel on the land taken as factors in determining the fair market value of the land taken. However, this does not mean that the land value and gravel value can be determined separately and then added together to arrive at the just compensation to which the owners are entitled for the land taken. The quantity, quality and value of underlying gravel in place in the ground is but one factor or group of factors to be considered among such other factors as you may wish to consider from the evidence in determining the fair market value of the land taken.

"The market value of the land containing gravel is not to be arrived at by multiplying the volume of gravel by the market value of such gravel per unit of measure."

The questions raised by Plaintiff's applications for entry of orders of possession nunc pro tunc being purely academic as a result of the foregoing will not be discussed.

An order dismissing and striking Defendants' counterclaims and affirmative defenses will be entered accordingly upon presentment.