16.50, 10.04629, 3.34, 1.84, 5.97741, 3.94 and 7.49319 ACRES OF LAND, MORE OR LESS, IN CHRISTIANA HUNDRED, NEW CASTLE COUNTY and STATE OF DELAWARE, CONRAD MARSH COMPANY, a corporation of the State of Delaware, and Unknown Owners, Defendant Below, Appellant, v. THE STATE OF DELAWARE upon the relation of J. GORDON SMITH et al., Constituting the STATE HIGHWAY DEPARTMENT OF THE STATE OF DELAWARE, Plaintiff Below, Appellee.

30.85 ACRES OF LAND, MORE OR LESS, IN CHRISTIANA HUNDRED, NEW CASTLE COUNTY and STATE OF DELAWARE, NEWPORT LAND AND IMPROVEMENT COMPANY, a Delaware corporation, and UNKNOWN OWNERS, Defendant Below, Appellant, v THE STATE OF DELAWARE upon the relation of the STATE HIGHWAY DEPARTMENT, plaintiff Below, Appellee.

11.20 ACRES OF LAND, MORE OR LESS, 5.86 ACRES OF LAND MORE OR LESS, 15.00 ACRES OF LAND MORE OR LESS, IN CHRISTIANA HUNDRED, NEW CASTLE COUNTY and STATE OF DELAWARE, WALTER E. ERHART, his wife, and UNKNOWN OWNERS, Defendants Below, Appellants, v. The STATE OF DELAWARE, upon the relation of the STATE HIGHWAY DEPARTMENT, plaintiff Below, Appellee.

*(February* 26, 1965)

WOLCOTT, Chief Justice; CAREY, Justice, and SEITZ, Chancellor, sitting.

*Clement C. Wood,* of Allmond and Wood, for appellants.

*William D. Bailey, Jr.,* of Bayard, Brill, Russell and Handelman, for appellee.

Supreme Court of the State of Delaware, Nos. 12, 13 and 14, 1964.

WOLCOTT, Chief Justice.

These are three appeals, consolidated for argument, from orders entered by the Superior Court in three condemnation actions brought by the State Highway Department. The answers filed by the defendants, Conrad's Company, Newport Land and Investment

Company, and Walter and Pearl E. Erhart, set up affirmative defenses and counterclaims seeking in effect to assert claims in trespass against the State for the tortious taking of valuable materials from the land which they claim to own; that a portion of the land claimed by Conrad's Compnay was being taken for a nonpublic use, and that ten acres of the land claimed by the Erharts was not included in the description contained in the complaint against them.

The State moved to strike the affirmative defenses and dismiss the counterclaims. The Superior Court entered its orders striking the affirmative defenses and dismissing the counterclaims with prejudice to the defendants. It appears that the trial judge, because he considered matters outside the pleadings, treated the State's motions as one for summary judgment. These appeals followed.

The land in question is marshland located in the area along the Christiana Creek between Farnhurst and Newport. The land is being acquired by the State as part of an extensive interchange complex for the Interstate Highway Program.

In 1956, it is alleged by defendants, the State, without knowledge on the part of the defendants, entered upon the lands in question and made test borings which revealed the presence of valuable deposits of sand and gravel. On August 22, 1960 the State commenced condemnation against Conrad's Company "without reservation", and in the case of the other two defendants "for engineering and construction work." The options further provided that for a stipulated sum within one year the State could purchase the land in return for the conveyance of fee simple title.

Within the option periods the State ascertained that defendants could not convey good fee simple title. Thereafter, discussions took place with defendants' counsel and attempts were made to obtain title insurance to no avail. Defendants' counsel requested a continuance of the condemnation action against Conrad's Company. Discussions and negotiations apparently continued between the parties after the expiration date of the options, September 6, 1961. In August, 1962,

the State commenced condemnation actions against the defendants other than Conrad's Company.

In April, 1963, the defendants learned that sand and gravel had been taken from the lands in question and gave notice to the State that they considered it a trespasser upon the lands and demanded damages resulting from that trespass. On May 24, 1963 the State, pursuant to 10 *Del. C.,* Sec. 6110, filed a Notice of Intent to take possession in all three actions and prayed for an order to that effect *nunc pro tunc* as of September 6, 1961. Defendants filed their answers and counterclaims on May 29, 1963. As referred to above, the Superior Court ultimately struck their affirmative defenses and dismissed their counterclaims based upon the alleged trespass.

The theory of the defendants that the State is liable to them for damages caused by a trespass is based upon the decision of this Court in *State ex rel. Smith v. Fenimore,* 3 Storey 439, 171 A. 2d 228. In that case we held that the State was liable for damages for a trespass committed in the absence of a condemnation proceeding, and that the landowner could maintain a separate action for damages against the State since Article I, Section 8, Delaware Constitution, *Del. C.* providing for compensation for the taking of property, was a self-executing waiver of the State's immunity from suit.

In the Fenimore case the trespass by the State was performed without there having been initially any attempt on the part of the State to acquire the land on which the trespass was committed. Under the circumstances, therefore, we held the State's entry upon the land unlawful and permitted the recovery of damages in the equivalent of a separate action, viz., a counterclaim in a condemnation proceeding.

We think, however, the circumstances of the case at bar differ widely from those in the Fenimore case. At bar these defendants entered into option agreements looking to the ultimate purchase of the land by the State at a fixed price, and at the same time giving to the State the right of immediate entry upon the land for the purpose of constructing the highway interchange contemplated. The options by

their terms were to extend for the period of one year. It is obvious that entry upon the land by the State was not a trespass, at least at the time.

In the course of that year it became apparent that the defendants could not convey to the State "good" title to the land. Thereupon, several means were explored to cure the alleged defect in defendants' titles, all to no avail. In the meantime the State proceeded with the removal of sand and gravel and the construction of the highway interchange. The defendants made no objection to this activity by the State, even after the expiration date of the option; took no action whatsoever to regain possession from the State, but on the contrary continued their efforts to perfect title or to renegotiate the option agreements. However, as hereinafter noted, the defendants apparently knew nothing of the presence of sand and gravel on the land and its removal by the State until 1963.

In August of 1962 the State instituted condemnation actions against Newport Land and Investment and the Erharts, an action having been previously instituted against Conrad's Company. It seems apparent that these actions were required because of the inability of the State, at least in the opinion of its counsel, to acquire good title to the land by conveyance. So far as the record shows, the defendants made no objection but apparently continued to acquiesce in the continued occupation of the land by the State and the continuance of construction upon it.

The acquiescence of the defendants continued until April of 1963 when, for the first time apparently, they learned that the land contained valuable deposits of sand and gravel which had been removed by the State. They made claim for payment which precipitated the filing by the State of a motion for possession *nunc pro tunc,* and the affirmative answers and counterclaims of the defendants.

All of the foregoing makes it quite clear to us that up to the time the existence of sand and gravel on the land was discovered by the defendants they not only acquiesced in but actively consented to possession of the land by the State and the construction by it of the

highway interchange. Indeed, counsel for defendants so conceded at oral argument. Thus, we think the defendants' position that the State was a trespasser may not be maintained. Nor, we think, does the expiration of the period of the option agreements make the State a trespasser for the reasons that the defendants acquiesced in the State's continued possession, at least passively, and took no steps to oust the State of possession.

It seems to be settled law that when a state or other authority having the power to condemn land enters upon the land of another with his consent and without having instituted lawful condemnation proceedings, the owner is thereafter precluded from claiming the entry to have been unlawful and a trespass. Particularly is this so when an expensive public improvement has been erected upon the land. 18 Am. Jur., Eminent Domain, Sec. 391; 30 C. J. S. Eminent Domain Sec. 412; *Roberts v. Northern Pacific Railroad Co.,* 158 U. S. 1, 15 S. Ct. 756, 39 L. Ed. 873; *Delaware R. R. Co. v. Weeks,* D. C., 293 F. 114.

In the case at bar, if, at the expiration of the option period, the State had in fact commenced condemnation proceedings and obtained orders of possession all in conformity with the statute, there is no question but that defendants could not have claimed a tortious taking. Of course, the State should have done this but it did not. We think, however, that it did not do so for the reason it and the defendants were united in an attempt to clear up the title difficulty, and were content to let the State remain in possession until the difficulty was removed. Accordingly, both sides went along agreeably in the mistaken belief that eventually the defendants would convey to the State and receive payment for the land claimed by them. No other conclusion seems justified from the record.

This being the fact, the defendants may not be permitted to argue that the State was a trespasser after the expiration of the options, since the only reason for that claim is their subsequent discovery that their land contained valuable materials. Certainly if the

State had exercised the options no such claim could thereafter be made for the land would have become the property of the State by the payment of an agreed value.

Fundamentally, we have an agreement in 1960 between these parties that the State should acquire the defendants' land by deed, but thereafter it developed that the defendants could not convey good title. Following attempts to remove this defect the State, with at least the tacit consent of the defendants, commenced condemnation proceedings in order to acquire good title. No objection was forthcoming from the defendants until later when they discovered for the first time the existence of the valuable deposits of sand and gravel.

We think they may not second-guess the State in this manner. The case is as though the land was being acquired by the legal exercise by the State of its power of Eminent Domain. The defendants acquiescence has precluded them from contesting its validity.

The question then remains as to what are the defendants entitled. They claim to be entitled to damages for a tortious taking but as we have pointed out, they have waived that right by their acquiescence, first, by putting the State in possession pursuant to the option agreements and, second, by permitting that possession to remain undisturbed after the expiration of the option agreements.

They now find themselves in the position of any other landowner whose land has been taken by condemnation and who, by reason of Article I, Section 8 of the Constitution, is entitled to compensation for the property taken. This is the market value of the property at the time of taking in view of all available uses and purposes of the property at the time. *Wilmington Housing Authority v. Harris*, 8 Terry 469, 93 A. 2d 518. In determining what this market value is the value of sand and gravel contained on the land is a factor entering into the value of the land. *5.97752 Acres of Land in New Castle County v. State*, Del., 202 A. 2d 924.

The trial court held that the measure of compensation to

which the defendants were entitled was the fair market value of the land taken, giving consideration to the sand and gravel deposits upon it. This, we think, is the proper measure of compensation to which the defendants are entitled. The fact that the defendants in the option agreements agreed to take a sum presumably less than this has no effect upon the amount of compensation since the State elected to permit those agreements to expire.

The Erharts contend that 10 acres described in their Counterclaim No. 2 were not included either within the description in the option agreement or in the complaint in condemnation filed by the State. The trial court held that it was so included which the Erharts argue was fact-finding on a motion for summary judgment not permitted under the rules.

The State, on the other hand, contends that no dispute as to a matter of fact existed and that it was merely a question of whether the land described in the Erharts' counterclaim was contained in the description of the complaint.

The point raised by the Erharts is confusing. Their answer purports to describe the 10 acres in question by reference to Sheet No. 16-F, dated January 31, 1960, revised March 24, 1960, made for the State by Barnes & Holden, Inc. The complaint filed by the State makes reference to the same sheet No. 16-F, as does the option agreement as well.

The trial judge after comparing the respective descriptions ruled that the 10 acres in question were contained within the description in the complaint in condemnation. Since the matter was decided upon the basis of non-controverted facts, this would seem to be the end of the matter.

Finally, Conrad's Company objects to the taking by the State of approximately 3.6 acres of its land on the ground that the State intends to transfer this 3.6 acres to the Town of Newport in exchange for land conveyed to the State by the Town of Newport.

■ The trial judge held the point was moot since the State admittedly entered into possession pursuant to the option agreement. We think, however, that the giving of possession pursuant to an option agreement, of itself, does not preclude an owner after the expiration of the option from defending a subsequent condemnation action on the ground of non-public use.

■ We express no opinion upon the questions (1)whether or not under the circumstance of the giving of possession pursuant to an option expiring later by its own terms but with possession continued thereafter with the tacit consent of the landowner, an estoppel against raising the defense of non-public use may be raised, and (2) whether in fact the 3.6 acres is being taken for a non-public use. We say this because the undisputed facts before us are insufficient for the purpose. We point out that the record is substantially bare of facts to support the landowner's basic contention that the 3.6 acres are being taken for a non-public use. The case must, therefore, go back to afford an opportunity to have these matters determined in the light of the facts.

For the foregoing reasons the judgments below are affirmed with the exception that Conrad's Company's case is remanded for further proceedings with respect to the said 3.6 acres.