The STATE of Delaware upon the relation of the STATE HIGHWAY DEPARTMENT, Plaintiff Below, Appellant,

v.

J. H. WILKERSON & SON, INC., a corporation of the State of Delaware; 10.33 Acres of Land, more or less, Situate in Cedar Creek Hundred, Sussex County and State of Delaware; and Unknown Owners, Defendants Below, Appellee.

Supreme Court of Delaware.

June 17, 1971.

Reargument Denied July 14, 1971.

Aubrey B. Lank, of Theisen, Lank & Kelleher, Wilmington, for plaintiff below, appellant.

William S. Hudson, Dover, for defendant below, appellee.

WOLCOTT, Chief Justice, and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice:

This is an appeal by the State from an order of the Superior Court in a condemnation case, affirming an award and refusing to grant a new trial.

The State condemned 10.33 acres of land owned by defendant, J. H. Wilkerson and Son, Inc., for the purpose of constructing a highway. The parcel of land, located in Cedar Creek Hundred near Milford, is divided into two parts. There is no dispute that the area fronting on Route 36 to a depth of 199.5 feet is best suited for use as residential building lots and has a value of $5,000.00; we shall not herein discuss that portion of the property. The dispute arises as to the value of the remaining 9.17 acres, which is used as a gravel pit.

The president and a director of defendant, Charles Wilkerson, testified that the land was purchased for $5,500.00 in 1960, but that the pit area alone is worth from $85,000.00 to $90,000.00 today, based on yardage of material remaining in the ground.

A civil engineer testified for defendant-condemnee that this was a select borrow pit containing 5,690 cubic yards of topsoil, 174,700 cubic yards of dry select borrow, and 172,750 cubic yards of wet select borrow. Using the average selling price of each grade of material at comparable pits, he valued the top soil at $2.00 a cubic yard as sold to the public, and after deducting costs, normal overhead, and profit, valued the topsoil in the ground at 95 cents a cubic yard. Using the same procedures, he valued the dry excavation at 30 cents a cubic yard to the public, and 24 cents a cubic yard in the ground; and estimated the value of wet excavation at 45 cents a cubic yard to the public, and 21 cents a cubic yard in the ground. The engineer testified that the total value of the topsoil and gravel in the ground was $83,611.00, but he did not testify as to the fair market value.

The only expert for the State, Franklin Wilkens, a realtor, gave a fair market value for the area, based on comparable sales of gravel pits in the five years preceding the taking, of $28,700.00; but Mr. Wilkens did not know, and could not distinguish between the different types of material found in either pit on which he based his comparison and the gravel pit in question.

The condemnation commission awarded the defendant $55,000.00. This appeal followed the denial by the Court below of the State's motion under 10 Del.C. § 6108(g) to set aside the award.

It must be kept in mind that the object of a condemnation proceeding such as this is to determine the market value of the property taken at the time of the taking; this means the price which would be agreed upon by a willing seller and a willing buyer under ordinary circumstances and with no compulsion to either buy or sell. 0.744 of an Acre of Land, etc. v. State ex rel. State Highway Department, Del.Supr., 251 A.2d 341 (1969). When the land contains mineral deposits such as by enhanced, but the object of the hearing is not changed thereby; this object is still the determination of the value of the land as thus enriched. It is wrong, therefore, to view that land as though it were simply a pile of excavated gravel. Certainly, the

value of the gravel in the ground may be considered; but, in doing so, it is improper to consider the value of the mineral content as if it were extracted from the ground and ready for a waiting market, at current or anticipated prices, in order to reach the fair market value of the property. The law does not permit the finders of fact to speculate as to the availability of a market, the status of prices, or the net margin of profit. Where the best and most valuable use of the land is as a borrow pit, evidence may be presented and considered by the commissioners as to the quantity of the gravel therein, its quality, and its value in the ground, after due consideration of the costs of removal and marketing. This factor or group of factors may be considered in determining the fair market value of the land taken, but under no circumstances does this mean that the land value and the gravel value can be determined separately and then added together, as was done here, to arrive at the just compensation to which the owner is entitled; State of Delaware ex rel. Smith v. 16.50, etc., Acres of Land et al., Del.Super., 200 A.2d 241 (1964), affirmed Del.Supr., 208 A.2d 55 (1965).

■ It is proper for a landowner to testify and give his opinion as to the market value of his land if he can establish his familiarity with its elements of value and the value of other comparable land in the neighborhood. 5.97752 Acres of Land, etc. v. State of Delaware, ex rel. Smith, Del.Supr., 202 A.2d 924 (1964). The owner's testimony is permissible only to help establish market value, not to show some particular or peculiar value to the owner himself.

■ In the present case, it appears that Mr. Wilkerson was actually testifying to the value to his corporation. Whether or not that be true, it is clear that he based his testimony upon the measurements and prices given by the engineer who testified for the appellee. Those figures constituted an estimate of the value of the gravel in the ground, but there was no showing whatever concerning the length of time that would be required to obtain those prices. Nowhere does the record contain any information concerning the market demand for gravel or the likelihood of any price changes, nor was this estimate of value discounted in any way, as it should be, in recognition of the extended time period of use remaining and the necessarily speculative demand for gravel during that period.

There is nothing in the record to show a ready market timed to coincide with the period immediately preceding the taking, other than the market created by the highway construction project itself. In short, no one knows, from this record, how many years would be required to dispose of the gravel at the prices given by the engineer, had the construction of this highway not taken place. It is well settled law that a land owner may not be compensated for any increase in value due solely to a demand generated by the public project itself. State of Delaware v. Botluck et al., Del. Supr., 200 A.2d 424 (1964); United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943).

In our opinion, the evidence as a whole was inadequate to enable the commission to arrive at a proper valuation. Much of the testimony was self-serving and based on methods improper to determine the fair market value. Furthermore, the instruction delivered by the Court below was limited, and contained no charge to the effect that the fair market value could not be a mere mathematical computation of the value of the gravel on the site added to the residual value of the land; nor did the instruction warn of the danger of the multiplication method alone in the valuation of the gravel pit and the necessity to adjust this by discounting that value in the respects we have mentioned. The law is settled on these points and should have been set forth in the charge.

The error is so fundamental that we must take cognizance of it and reverse the Court

below, even though no objection was made to the testimony and no exception was taken to the charge by counsel. Pennsylvania Railroad Company v. Goldenbaum, Del.Supr., 269 A.2d 229, 234 (1970); Wiggins v. State, Del.Supr., 210 A.2d 314, 316 (1965); and South Atlantic S. S. Co. of Delaware v. Munkacsy, Del.Supr., 7 W. W. Harr. 580, 187 A. 600, 606 (1936). Consequently, we reverse the award and remand the matter for a new trial.