The STATE of Delaware upon the relation of the SECRETARY OF the DEPARTMENT OF HIGHWAYS AND TRANSPORTATION, Plaintiff below, Appellant, Cross-Appellee,

v.

DAVIS CONCRETE OF DELAWARE, INC., a corporation of the State of Delaware, et al., Defendant below, Appellee, Cross-Appellant.

Supreme Court of Delaware.

Submitted Nov. 12, 1975.

Decided April 1, 1976.

Aubrey B. Lank, Theisen, Lank & Mulford, Wilmington, for plaintiff below, appellant and cross-appellee.

Eduard F. von Wettberg, III, Wilmington, and Patrick A. O'Doherty, Baltimore, Md., for defendant below, appellee and cross-appellant.

Before HERRMANN, C. J., DUFFY, J., and BROWN, Vice Chancellor.

HERRMANN, Chief Justice:

In this condemnation case, brought under 10 Del.C. ch. 61, a concrete mixing plant, consisting of land, buildings, machinery and equipment, was taken by the State for highway right-of-way purposes. The award of the condemnation commission was $575,000. The State appeals on the ground that evidence as to value to the owner of the business as a going concern was improperly admitted. We agree.

## I.

The State's case consisted of the testimony of expert witnesses that, under the cost-of-reproduction approach to fair market value,[1] the property had a value of between $249,230 and $287,580. This evaluation consisted of $114,230, the depreciated value of buildings, machinery and equipment, and between $23,650 and $30,000 per acre (or between $135,000 and $173,350) for the land.

For the owning corporation, its vice-president, James D. McCraw, testified on direct examination that the highest and best use of the property was for producing concrete; that, in his opinion,[2] the value of the property for that use was $750,000. Upon cross examination, Mr. McCraw testifed that $463,000 of his valuation was the value of the business to the owner as a going concern.[3] In this connection, Mr.

---

1. For the three generally recognized approaches to the appraisal of fair market value, including the reproduction cost approach, see *Wilmington Housing Authority v. Greater St. John Baptist Church,* Del.Supr., 291 A.2d 282 (1972).

2. The owner may testify as to value if he can establish his familiarity with the elements of value. *State ex rel. State Highway Department v. J. H. Wilkerson & Son, Inc.,* Del.Supr., 280 A.2d 700 (1971).

3. Mr. McCraw testified as follows:
 "Q When you say 'property,' Mr. McCraw, what do you mean by that?
 A We accept the State's offer of $30,000 an acre. What I was saying, on the $750,000 figure is, that's for total taking, business and property and the existing buildings.
 Q Well, how much for business?
 A For business that would be the difference between $287,580.
 * * * * *
 Q All right. Now, we got that far. The ground and buildings are worth $287,580?
 A Right.
 Q Is that what you are saying?
 A Yes.
 Q What is the $463,000 balance?
 A The business.
 * * * * *
 Q Now, what do you base the $463,000 loss of business on?
 A What I base the loss?
 Q What do you base the $463,000 on as being loss of business?
 A I didn't say it was the loss of business.

 Q Well, what was it? You just got through telling me that's what you value the business at.
 A Is that the difference between the two eighty-seven?
 Q We will say as rough figures that's what it is.
 A I'm saying that's what the business is worth to you.
 Q That's what the business is worth to you?
 A That's right.
 Q Now, Mr. McCraw, let's go back to my previous question. Upon what do you base the value of $463,000? Can you give us a breakdown of that?
 A Well, the fact that we can't relocate, that automatically wipes out $300,000 sales we had over a period that I had broken down to you in three years. We are in an ideal location right now to double ourselves. Competition in regard to where we are located, we just have the best spot, outside of the Material Transit which is located about a block away from us; accessibility to the highways, as you know 141 coming right through there, we can go through Newport, get on 95 and hit northern Wilmington. Newark, of course, we have Kirkwood Highway two blocks away. I just think we are in an ideal spot.
 Q Well, I appreciate that and you probably were in an ideal spot but there has to be some basis upon which you base the $463,000 figure and that's what we are trying to find out. What grounds did you use to base that loss of profits?
 A I just gave you that.
 Q You said you wiped out the sales; is that where you—

McCraw testified as to the gross sales figures of the business for the years 1971, 1972, and 1973. The owner contended, and the State conceded, that the plant could not be relocated in Delaware because of zoning and ecological restrictions.

The foregoing was the sum and substance of the owner's case on valuation.[4] Upon the conclusion of Mr. McCraw's cross examination, the State moved to strike all of his testimony on value. The Trial Court denied the motion. This was reversible error.

## II.

The owner was improperly permitted to introduce into the trial of "just compensation" in this case a loss-of-the-business value *per se*, personal to the owner and not shown to be related to the fair market value of the real property taken.

The sole issue in the ascertainment of the "just compensation", to which an owner is entitled by constitutional provision[5] in a condemnation case in this State, is the fair market value of the real property taken. Such market value is the price which would be agreed upon by a willing seller and a willing buyer without any compulsion upon the seller to sell or the buyer to buy. It is not a value peculiarly personal to the owner, *State ex rel. State Highway Dept. v. J. H. Wilkerson & Son, Inc.,* Del.Supr., 280 A.2d 700 (1971), and it is not enhanced by any unwillingness on the part of the owner to dispose of the property. *Bd. of Education, etc. v. 13 Acres of Land, etc.,* Del.Super., 11 Terry 387, 131 A.2d 180 (1957); *Wilmington Housing Authority v. Harris,* Del.Super., 8 Terry 469, 93 A.2d 518 (1952); *cf. 0.744 of an Acre of Land v. State ex rel. State Highway Dept.,* Del. Supr., 251 A.2d 341 (1969).

It is settled here and elsewhere that, in determining constitutional "just compensation", the owner is not entitled to recover compensation for the destruction of a business being conducted on the land taken. A business is not "property" in the constitutional sense; and the value of a business is not material to the issue of just compensation, except insofar as it may tend to establish the market value of the real property. *Ableman v. State ex rel. Sec., Department of Highways & Transportation,* Del.Supr., 297 A.2d 380 (1972); *Restaurants, Inc. v. City of Wilmington,* Del.Supr., 274 A.2d 137 (1971); *Improved Parcel of Land, etc..v. State ex rel. State Highway Dept.,* Del.Supr., 201 A.2d 453 (1964). This rule prevails generally throughout the country in the absence of statute. 4 *Nichols on Eminent Domain* § 13.3, at 13–148.2 *et seq.* (3rd ed. 1975).

Unquestionably, the rule excluding loss of a business as an element of constitutional "just compensation" often works great hardship. It is for that reason that several States (Florida, Vermont, Pennsyl-

---

A You just wiped us out. You wiped us out completely.

Q But we are talking about loss of business, aren't we?

A That's right.

Q And that's what you claim to be compensated for is loss of business?

A I think we agree on the ground and the existing structures.

Q And the balance of that is loss of business?

A What the business would be worth to us and the loss of business."

4. The only other valuation witness for the owner was the employee of a competitor who gave an unsupported opinion that, because of location, a willing buyer would pay $625,-000 for the plant. This witness was not qualified to testify on value. He showed no training or experience to warrant admission of his opinion testimony on the subject. See 5 *Nichols on Eminent Domain,* § 18.41, at 18–140 *et seq.* (3rd ed. 1975).

5. Del.Const. Art. 1, § 8 provides:
"§ 8. Prosecution by indictment or information; double jeopardy; just compensation for property.
"Section 8. * * * [N]or shall any man's property be taken or applied to public use * * * without compensation being made."

vania, New York) have made statutory provision for the allowance of compensation for damages to business conducted on land taken by eminent domain. See 4 *Nichols* § 13.3, at 13–154 *et seq.* Delaware, however, has no statute providing for loss-of-business compensation. Until such time as legislative action is taken in this area, loss of a business *per se* must remain non-compensable under our law of eminent domain.

 Although loss of a business conducted upon land taken by eminent domain may not be considered a separate element of damages, it does not follow that the value of a business is irrelevant to the fair market value of the property taken. The owner of the property taken is entitled to have considered, in a determination of just compensation, not only the general and naturally adapted uses of the property, but also any special value due to its adaptability for a particular special use, *Wilmington Housing Authority v. Harris, supra,* 93 A. 2d at 521; and proof of fair market value permits proof of all valid elements of value, including such facts as the owner would properly and naturally use to influence a prospective purchaser. *State v. 0.15 Acres of Land, etc.,* Del.Supr., 3 Storey 372, 169 A.2d 256 (1961).

 Accordingly, although the value of a business conducted upon the real property condemned may not be considered a separate and independent element of damage to be added to the value of the real property taken, it may be considered as a factor bearing upon the fair market value of the realty. *Ableman, supra,* 297 A.2d at 383. Thus, the special value of land, owing to its adaptability for use in a particular business, is an element which the owner of the land is entitled to have considered in the determination of the amount to be paid as just compensation for the taking of the land. In particular, the existence of a going business on the land may be considered as indicative of the highest economic use to which the land may be put. But the emphasis must not be on the loss of the business *per se*; it must be on the impact of its existence as a use which tends to enhance the market value of the land. 4 *Nichols* § 13.3[1], at 13–172. The question is whether, by reason of the going concern, a prospective purchaser would pay more for the physical property than the "bare bones" value thereof. 2 *Orgel on Valuation Under Eminent Domain* § 216, at 122–23 (1953); see also *Seferi v. Ives,* 155 Conn. 580, 236 A.2d 83 (1967). In this connection, data of gross sales, but not profits, may be admissible. *Ableman, supra,* 297 A.2d at 383.

The error in the instant case thus becomes clear. Manifestly, Mr. McCraw arrived at the owner's valuation not by relating the value of the business to the fair market value of the realty, but by adding thereto a separate element of damages for the loss of the business; and, unquestionably, the Commission followed the same mistaken route in determining the amount of its award of just compensation.

It follows that the award must be set aside and the case remanded for new trial.

### III.

In a cross appeal, the owner states that it is content with the award; but that, if there is to be a new trial, guidelines are requested for the following problems:

The owner seeks to avoid application of the general rule, making uncompensable a loss of the business operated on the site being taken, by contending that the State has admitted taking the business itself. In this connection, the owner points to the following provision of a stipulation entered into by the parties:

> 8. That the issue of damages sustained by the Defendant resulting from the taking by the Plaintiff of the Defendant's business aforesaid shall remain open and shall be subject to determination in the trial of the said condemnation proceedings aforesaid.

The owner's cross appeal is based upon the ground that, in view of the "concession" that the State took the owner's business, it was entitled to compensation for the loss thereof.

This is not a case in which a business enterprise is directly taken over by the condemning authority for operation, such as a public utility. 1 *Orgel* § 80, at 348. In effect, the owner simply seeks a reversal of, or an exception to, the general rule of non-compensability for the loss of a business as a separate element of .damages under constitutional just compensation. We find nothing in this case to warrant such reversal or exception.

■ Finally, the owner questions the propriety of the use by the State's expert witnesses of the cost-of-reproduction approach to fair market value. The owner has placed nothing in the record of the case to show the existence of comparable sales or other more reliable approaches to the problem of value. Moreover, the owner has adopted the State's evidence based upon the cost-of-reproduction approach. The owner had the burden of proving the amount of the just compensation to which it is entitled. This it failed to do. It has no basis for complaint as to the qualifications or the techniques of the State's witnesses.

Reversed.