**HOME BENEFICIAL LIFE INSURANCE COMPANY, a corporation of the State of Virginia, Plaintiff,**

v.

**BLUE ROCK SHOPPING CENTER, INC., a corporation of the State of Delaware, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted Sept. 23, 1977.

Decided Oct. 18, 1977.

David F. Anderson of Potter, Anderson & Corroon, Wilmington, for plaintiff.

William F. Lynch, II of Morris, James, Hitchens & Williams, for defendant.

TAYLOR, Judge.

Plaintiff holds a mortgage covering a multi-story office building at 30th and Governor Printz Boulevard, Wilmington, Delaware, on which the mortgage indebtedness with interest exceeds $800,000. The property was sold at sheriff's sale pursuant to foreclosure of the above mortgage for $390,000 at sale on July 12, 1977. Plaintiff, the mortgagee, was the purchaser at the sale. Defendant, the mortgagor and owner, has moved to set aside the sale on the ground that the sale price was a grossly inadequate price which shocks the conscience of the Court.

Defendant relies primarily upon the decision of the Bankruptcy Judge in the Chapter XI proceeding involving defendant in the United States District Court for the District of Delaware which in the course of discussing methods of valuation refers to a fair market value of $884,000 based on capitalization and expenses and concludes "I am not convinced that the debtor has no equity but is is a close question." At the hearing on this motion the president of defendant valued the property at $1,000,000, and the appraiser for plaintiff valued the property at $680,000.

## I. EFFECT OF THE CHAPTER XI DECISION

This foreclosure action was commenced in December, 1975. It appears that the Chapter XI proceeding involving defendant was filed in August, 1976. This automatically stayed further proceedings in the mortgage foreclosure action. 8 *Collier on Bankruptcy* 237, pp. 3.20[3.2]. Plaintiff moved to relief this foreclosure action from the stay. After hearing, the Bankruptcy Judge discussed methods of valuing the property. In considering the different methods of valuation, the Court stated that capitalizing rent at 12% would result in a fair market value of $884,178.85, and this value would increase substantially by a reduction in capitalization rate. The conclusion of the Judge was:

> "Thus, I am not convinced that the debtor has no equity but it is a close question.
>
> \* \* \* \* \* \*
>
> While there is no basis in the record for a protracted stay, the receiver should have a little more time to accomplish his goal provided there is adequate insurance coverage on the security."

It must be recognized that pursuant to Bankruptcy Rule 11–44 the automatic stay of a proceeding such as this foreclosure proceeding remains in effect during the Chapter XI proceeding until ordered otherwise by the Court. 14 *Collier on Bankruptcy* 11–44–16, pp. 11–44.03. Upon application for relief from the stay, according to *Collier,* the determination involves a balancing of the equities with the objective being "to eliminate the inequitable prospective application" of the stay. 14 *Collier on Bankruptcy* 11–44–24, pp. 11–44.05. By its nature, this involves essentially the exercise of sound discretion.

◼ In order for a prior judicial finding to be binding as collateral estoppel in another proceeding, there must have been an actual determination and the finding must involve a fact which was essential to the judgment and the judgment must have been valid and final. *Tyndall v. Tyndall,* Del.Supr., 238 A.2d 343 (1968); *Niles v. Niles,* 35 Del.Ch. 106, 111 A.2d 697 (1955).

■ From a reading of the Transcript of Decision of the Bankruptcy Judge, I conclude that the Judge in that instance exercised her sound discretion based upon a balancing of the equities by continuing the stay of this proceeding for a period of 41 days. By subsequent Order, the stay was further continued for an additional 62 days. The Bankruptcy Judge in considering a further extension of the stay noted that in her prior decision she had noted that the equity (valuation) factor "was a close one" and noted the efforts to bring about a sale or lease of the property during the prior stay periods. She then concluded that "to continue the stay beyond June 1, 1977, would be an abuse of judicial discretion." Accordingly, I do not find that the Bankruptcy Judge made an "actual determination" of fact as to value or that a finding of value was essential to the orders extending the stay, since they were simply the exercise of sound judicial discretion. Hence, the reference to value of $884,178.85 by the Bankruptcy Judge does not bind the parties in this proceeding.

## II. SUFFICIENCY OF THE SALE

■ Where price is the chief determinant, the Court will not set aside a sheriff's sale unless the sale price is so grossly inadequate as to shock the conscience of the Court. 2 *Woolley on Delaware Practice* § 1121; *In Re Downham Co.*, Del.Super., 5 W.W.Harr. 294, 165 A. 152 (1932); *Central National Bank v. Industrial Trust Co.*, Del. Super., 4 Terry 530, 51 A.2d 854 (1947); *Emigrant Savings Bank v. Watson,* Del.Super., 4485 C.A. 1975, Opinion September 20, 1976, Taylor, J., aff'd Del.Super., 367 A.2d 650 (1976). In general, the standard which has been applied by this Court has been whether or not the sheriff's sale price represented 50% of the fair market value of the property. Ibid. However, factors such as the nature and size of the property or the structures on it and the magnitude of its value are factors which may lead to a departure from the traditional 50% test. *Girard Trust Bank v. Castle Apartments, Inc.,* Del.Super., 379 A.2d 1144 (1977) (1976, Taylor, J.).

■ Two valuations of the property are properly before this Court. Plaintiff's expert appraiser valued the proper, based upon capitalized income, at $680,000. Defendant's president valued the property, based primarily on replacement cost, at $1,000,000. Under the principle that an owner, although not an expert appraiser, may testify to his opinion of the value of his property, *State v. Davis Concrete of Delaware, Inc.,* Del.Supr., 355 A.2d 883 (1976), I will consider his testimony. The question is the weight to be given to that testimony in relation to that to be given to the testimony of plaintiff's expert. I conclude that substantially greater weight should be given to the appraisal of plaintiff's expert because of (1) the background of the witness, (2) the extent of familiarity with the Wilmington real estate market, and (3) the greater significance here of valuation based upon anticipated income than reproduction cost. Accordingly, I find that fair market value of the property does not exceed $780,000, and hence the sale price was not less than 50% of the fair market value.

■ It should be noted further that the nature and size of the building and the magnitude of its value may be such as to remove it from the category of ordinary real estate transactions because the customary buyers at auction sales would not be in a position to buy this property. It does not appear that anyone other than the mortgagee was prepared to bid on the property nor has it been shown that a higher bidder is likely to bid at a new auction sale.

No element of unfairness, impropriety, inadvertence or legal defect in the sale proceeding has been shown.

It must not be overlooked that the objective of judicial scrutiny of sheriff's sales is not to delay the consummation of the execution but to assure that the defaulting obligor has received just treatment in the execution process. The realistic consideration of the factors relating to the property, the delays to permit disposition of the property through the Chapter XI proceeding and the absence of likelihood of additional

buyers leads to the conclusion that justice would not be served by setting aside this sale and that such result is not compelled by the rules by which sheriff sales are tested by the Court. Accordingly, the motion to set aside the sheriff's sale is denied and the sale is confirmed.

IT IS SO ORDERED.